No. 46,745

Adolph H. Boeckmann, *Appellant,* v. Goodyear Tire and Rubber Company of Kansas, Inc., and Aetna Casualty & Surety Company, *Appellees.*

(504 P. 2d 625)

Opinion filed December 9, 1972.

*George E. McCullough,* of the firm of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for the appellant.

*James E. Benefer,* of the firm of Fisher & Benfer, of Topeka, argued the cause, and *Charles S. Fisher* and *Robert D. Ochs,* of the same firm, were with him on the brief for the appellees.

The opinion of the court was delivered by

Fontron, J.: This is an action to recover workmen's compensation benefits. The claimant, Adolph H. Boeckmann, was employed by the respondent, Goodyear Tire and Rubber Company of Kansas, for some sixteen years, the last six in the capacity of a special classifier and inspector of truck and tractor tires. The examiner entered an award for medical expenses but denied compensation for permanent or temporary total disability and the director affirmed the award on review. The district court, on appeal, adopted the examiner's findings and affirmed the award as entered. The claimant now brings the case to this court. We shall refer to the parties as claimant or Boeckmann on the one hand and respondents or Goodyear on the other.

At the time claimant became disabled in June 1969, he was 54 years of age and had a history of degenerative arthritis of the hips dating back to 1958. In 1963 he underwent an operation to his left hip and a metal cup or prosthesis was inserted in the hip

by Dr. Kroll, a Topeka orthopedic surgeon. Claimant remained under Dr. Kroll's care for some year and a half thereafter.

In 1966 Boeckmann noticed pain occurring in his right hip which continued to progress regularly. During the summer of 1968 the pain became noticeably worse and progressed more rapidly. Some three weeks prior to June 7, 1969, after a coffee break at the Goodyear plant, the claimant got up from the conveyor belt on which he had been lying, and felt a pain in his back. The next morning he was unable to get out of bed and was away from work for three days. On this occasion he consulted a Hiawatha doctor. At this time he also secured an appointment to see Dr. Kroll on June 10.

On June 7, 1969, Mr. Boeckmann pulled a tire off the conveyor belt to be buffed. After buffing the tire he rolled it back to the conveyor and had stooped down to pick it up so that he might replace it on the belt when a pain hit him in the back. He notified the plant office at this time, and on June 10 he kept his appointment with Dr. Kroll. The doctor advised him not to return to work, and the claimant has been on retirement disability ever since.

The examiner found that claimant was disabled from doing strenuous labor; that both hip joints have deteriorated to the point where he is unable to do the things his job required; that he is disabled because of his diseased hips and not because of back strain; that there was no causal connection between the back strain of June 7, 1969, and claimant's hip condition; that while the bending, stooping and twisting required by claimant's job aggravated the arthritic process already existing in his hips, these episodes did not amount to miniature accidental accidents, but that the simple everyday acts of living were as much to blame for claimant's condition as was his work. The examiner concluded. that the accidental injury to the claimant's back on June 7, 1969, resulted in no permanent disability. Accordingly, the examiner denied any award for permanent or temporary disability while allowing, at the same time, medical benefits related to the June 7 incident. As has been said, the examiner's findings were approved and his award was adopted both by the director and by the district court.

On the present appeal the claimant makes two contentions, one of them being that the examiner's finding that no causal relationship existed between the accidental strain to claimant's back on June 7, 1969, and claimant's present disability, is not supported by the evi-

dence. As we read the record before us this claim must be rejected, for our rule in compensation cases is that where findings are supported by substantial competent evidence they will not be overturned on appeal. (5 Hatcher's Kansas Digest [Rev. Ed.] Workmen's Compensation, § 137.) Dr. Kroll attributed the claimant's disability to the arthritic changes in his hips and was of the opinion the June 7 incident would not make any difference in the hips. Two other medical doctors testified by deposition, one of whom related an aggravation of claimant's hip problems to the back strain of June 7, while the other doctor did not think any relationship between the two was very likely. It is apparent that the evidence on this point was conflicting. Hence the examiner's negative finding, affirmed by the district court, to the effect that no disability, either permanent or temporary, resulted from the accidental injury of June 7, is to be sustained, agreeably to our rule.

The claimant's principal reliance, however, is based on what he denominates as the *Winkelman* doctrine. At oral argument Boeckmann's counsel prefaced his remarks with the assertion that the legal question presented here is whether that doctrine is applicable under the confronting facts of this case. It therefore behooves us to take a look at *Winkelman v. Boeing Airplane Co.*, reported in 166 Kan. 503, 203 P. 2d 171.

*Winkelman* was a common-law action to recover damages for permanent loss of hearing. The workman had been employed by Boeing for some 18 months during the second world war as an assistant instructor of guards at the company's indoor pistol range. He fashioned his case on the theory that the indoor range as constructed and operated was not a safe place for pistol firing; that he was subjected to constant explosions of .38 calibre ammunition which reverberated against the walls, ceiling and floor for an abnormal length of time; that the continuous and extended periods of gunfire gradually impaired his hearing; and that his hearing loss did not result from an accident within the purview of the Workmen's Compensation Act. On the other hand, the defendant asserted that Winkelman's injury was compensable under the act, thus barring him from maintaining a common-law damage action. This court agreed with the defendant's point of view and directed judgment in its favor.

We are frank to acknowledge that if the rationale of *Winkelman* is applicable to the situation before us, this case must be reversed. Even-handed justice requires that in determining whether a work-

man's injuries come within the compensation act the same legal principles must control and the same standards must be applied whether an employer makes such a claim in defending a common-law action or a workman advances the claim in attempting to recover compensation. A majority of this court believes, however, there are important distinctions between the facts presented in *Winkelman* and the facts surrounding this case, and that the factual differences so distinguish the two cases that the rationale of *Winkelman* has no relevance here.

A critical distinction lies in the fact that the medical evidence related Winkelman's loss of hearing to trauma occurring on the job. It was trauma, according to the doctor's testimony, which damaged the small nerve ends in the affected ear and led to Winkelman's deafness. The court made this clear where it said:

"That the instant injury is of traumatic origin was clearly established. The traumatic deafness, employing the language of Doctor Seydell, resulted from the 'constant hammering.' Such hammering did not give the injury to the ear, the hearing, an opportunity 'to come back.'" (p. 506.)

In elaborating on the accidental nature or origin of the hearing loss, the court goes on to say:

"Appellee argues there is no evidence that injury or disability occurred to the workman after any one specific pistol shot and states that this '. . . is the crux of plaintiff's cause of action.' It frankly should be conceded there was no evidence that any one particular shot alone produced permanent traumatic deafness. The substance of the evidence is that the constant and intensive firing and hammering which did not permit 'the hearing to come back' produced the traumatic deafness. . . . Manifestly each pistol retort or explosion, at the time it occurred, caused some injury and contributed to the permanent injury. . . ." (p. 508.)

In contrast, there is no evidence here relating the origin of claimant's disability to trauma in the sense it was found to exist in *Winkelman*. No outside thrust of traumatic force assailed or beat upon the workman's physical structure as happened in *Winkelman*. Whatever the origin of Mr. Boeckmann's crippling arthritis may have been, it was not born of his employment. It existed before claimant entered upon his duties as an inspector of heavy tires, and it is safe to infer the degenerative process will continue to progress long after his retirement. In these aspects the instant case differs from *Winkelman*.

Claimant calls our attention to the definition of "accident" set out in *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 300, 303 P. 2d 197, where this court said that the term, as used in the Workmen's

Compensation Act, was to be construed "as meaning an occurrence or event which is undesigned, sudden and unexpected, usually of an afflictive or unfortunate character and often, but not necessarily, accompanied by a manifestation of force." We might add that the court also said that personal injury is generally construed as meaning a lesion or change in physical structure causing the body to give way under stress of a workman's usual labor and it is not essential that the disorder be such as to present external or visible signs of its existence.

The language in *Pinkston* must be examined in relation to the facts of that case. The medical testimony indicated that Pinkston's death was due to an acute coronary occlusion which had not existed for any period of time prior to his death; that a short time before he was stricken, the decedent had been walking over uneven terrain in the cold temperature prevailing at the time which had constricted the coronary arteries and would aggravate and precipitate the attack. The court held that Pinkston's activity in walking up and down a ravine in the rain under freezing temperatures while garbed in heavy clothing authorized the trial court to relate the coronary occlusion to his physical exertion and to conclude that such exertion was a contributing factor to the fatal seizure which was "as distinctly traumatic as if the heart had been stopped by the violent application of force from without." (p. 301.)

Claimant cites other cases similar to *Pinkston,* in that evidence of external trauma was lacking. In each of them, however, the injury was shown to be sufficiently related to a particular strain or episode of physical exertion to support a finding by the trial court of an accidental injury arising out of and in the course of the workman's employment.

As being representative of this class of cases, it is pertinent to note, in addition to *Pinkston,* the early case of *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793, where the workman was employed in a quarry, breaking large rocks into smaller rocks with a 16 pound sledge and loading the rocks into small cars. While so engaged he suffered a hemorrhage from the rupture of a pulmonary artery and he died before medical aid could reach him. We shall not burden this opinion by analyzing other cases cited of similar import. It is sufficient to say they involve injury or damage directly related to a strain or strenuous incident, even though trauma in an outside sense was not apparent.

The instant case differs from *Winkelman, Pinkston, Gilliland* and other cases where so-called internal trauma was found, in that here the medical evidence is conflicting not only as to the causal connection between claimant's arthritic hips and the June 7 strain, but also as to the relationship between the degenerative hip condition and the claimant's general employment with Goodyear. Dr. Kroll testified he did not think that Mr. Boeckmann's hip problems, or the disabilities arising therefrom, were caused by his work at the Goodyear plant; that his employment did not cause his condition to occur; that the hip condition had been a progressive process; that increased activity was liable to aggravate the claimant's underlying problem but that almost any everyday activity has a tendency to aggravate the problem; that every time the claimant bent over to tie his shoes, or walked to the grocery store, or got up to adjust his TV set there would be a kind of aggravation of his condition. Dr. Coffey saw a connection between an aggravation of claimant's condition and his work, but he also felt that any kind of trauma, including the ordinary incidents of life such as walking around the yard or house or schoolyard would produce trouble for a man in claimant's condition. Dr. Cavanaugh testified that degenerative arthritis or *malum coxae senile,* as the condition is commonly used in orthopedic parlance, is not traumatically induced but that the joint surfaces just waste away; no one knows its cause or why it happens; that it is insidious and persistent; it gets worse all the time regardless of what one is doing; that it happens to housewives, and would progress even in a wheelchair.

As counsel for claimant asserts, this court has held many times that aggravation of a pre-existing physical condition is compensable in a workmen's compensation action where the injury arose out of and in the course of the workman's employment, for the Workmen's Compensation Act prescribes no standard of health for workmen. (*Geurian v. Kansas City Power & Light Co.,* 192 Kan. 589, 389 P. 2d 782; 5 Hatcher's Kansas Digest [Rev. Ed.] Workmen's Compensation, § 16.) This is not to say, however, that a relationship need not be established between the aggravation and accidental injury arising out of the employment. Causation remains an essential.

Both Dr. Kroll and Dr. Coffey expressed the opinion that the bending, the stooping and the lifting required in claimant's work would aggravate the underlying arthritic changes, and the examiner so found. But with the exception of the June 7 incident, there is

no evidence, medical or otherwise, relating to the claimant's condition to any strain, stress or unusual exertion in either time, place or circumstance. To the contrary, it rather plainly appears that the everyday bodily motions required by claimant's work gradually and imperceptibly eroded the physical fibers of his structure, as the patient drip of water wears away the stone. The examiner found, on what we deem sufficient evidence, that any movement would aggravate Boeckmann's painful condition and there was no difference between stoops and bends on the job or off.

This brings us again to the heart of the case—the essence of claimant's contention. The claimant would have this court hold that the ordinary movements and motions of his daily work, the bending, stooping and twisting as he puts it, were tantamount to a continuous series of minuscule accidents which eventually, over the years, culminated in his permanent disability, thus entitling him to compensation as from a work-related accident. This contention essentially amounts to the argument that the physical, commonplace, day to day activities of a person's employment, whatever they may be, as they continue to nibble and wear away the bones, joints and tissues which once were strong and sturdy in the early days of youth bring in their wake an endless succession of minute compensable accidents unrelated to time, place or circumstance. In our opinion this philosophy is not encompassed within the boundaries of the Workmen's Compensation Act and we decline to give the act such a construction.

The judgment of the court below is affirmed.

SCHROEDER, J., dissents.