No. 56,391

CECIL C. BOX, *Claimant-Appellee,* v. CESSNA AIRCRAFT COMPANY, *Defendant-Appellant,* and THE HARTFORD ACCIDENT & INDEMNITY COMPANY, *Defendant-Appellant,* and WORKERS' COMPENSATION FUND, *Defendant-Appellee.*

(689 P.2d 871)

Opinion filed October 26, 1984.

*Randall E. Fisher,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, argued the cause, and *Alvin D. Herrington,* of the same firm, was with him on the briefs for appellants.

*Robert L. Nicklin,* of Robert L. Nicklin, P.A., of Wichita, argued the cause and was on the brief for appellee Cecil C. Box.

*Robert D. Steiger,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the brief for appellee Workers' Compensation Fund.

The opinion of the court was delivered by

MILLER, J.: This is an appeal from the District Court of Sedgwick County in a workers' compensation case. The trial court found that the claimant, Cecil C. Box, had sustained 100% permanent disability resulting from an occupational disease as defined in K.S.A. 44-5a01, and entered judgment for the workman and against his employer, Cessna Aircraft Company, and its insurance carrier, The Hartford Accident & Indemnity Company. None of the award was assessed against the Workers' Compensation Fund. Cessna and The Hartford appeal.

The claimant began working for Cessna in August of 1964. He was in good health and had had no prior respiratory ailments. He worked on "squawks," defects that appear on an airplane after its manufacture is complete. The area in which he worked was in or very near the paint shop. Frequently other workmen would be painting the plane while claimant worked on it. There was considerable evidence that the air in the area was often heavy with paints, lacquers, thinners, solvents, cleaners, and other chemicals being sprayed or used. About 1972 the claimant had pneumonia and was hospitalized for about a week. He returned to work and first started having breathing problems in the summer of 1976. He went into the hospital for a few days and then returned to work, but his respiratory problems continued. He last worked on February 15, 1977. A claim was filed and this proceeding was instituted shortly thereafter.

Three physicians testified and the report of a fourth was admitted by stipulation. Claimant's treating physicians were Dr. Dillis L. Hart, who is board certified in the area of general surgery, and Dr. Richard W. Spann, board certified as an internist and also in the subspecialty of pulmonary disease. Dr. R. Lawrence Sifford, board certified in internal medicine, and Dr. Curtis C. Drevets examined the claimant for the respondent. Both Dr. Hart and Dr. Spann diagnosed the claimant as suffering from chronic bronchitis. The differences between emphysema, bronchitis and obstructive pulmonary disease or obstructive airway disease were discussed at length during the examination of these witnesses. Dr. Spann testified clearly that the claimant's predominant disease is not emphysema but is chronic bronchitis, and he expressed the opinion that the cause of the bronchitis in this case was work-related. Dr. Sifford found no emphysema, no chronic obstructive pulmonary disease, and in general found the claimant to be in excellent physical condition and able to do heavy work. He said that the claimant did have a little wheezing and a very slight amount of obstruction, but that he was physically healthy and had no disability. He expressed the opinion that claimant has mild intermittent bronchospasm and mild intermittent coughing, related to a mild bronchitis, caused in most probability by the inhalation of cigarette smoke. The letter from Dr. Drevets is written on the letterhead of the Wichita Clinic. It lists Dr. Drevets under internal medicine, allergy and pulmo-

nary diseases. He expressed the opinion that claimant has mild obstructive airway disease. He expressed the suspicion that claimant's environment may have contributed in part to his current problem. Dr. Drevets did not consider the claimant disabled though he may have difficulty in returning to an environment where there are fumes or dust; but the doctor thought claimant had good enough pulmonary function to do other kinds of work.

There is extensive and conflicting evidence as to claimant's smoking history. He testified that he smoked cigarettes while he was in the service and then quit. He resumed smoking when he went to work for Cessna in 1964 and then quit in 1972 or 1973. During this time he smoked only about one-half pack a day. He has not smoked since then. There was evidence produced by the appellant, by way of Cessna medical records, indicating that claimant may have smoked more. This is also indicated by forms claimant filled out for the Disability Determination Services. Both sets of records contain inconsistent information. Claimant was required by Cessna to take an annual physical examination which was required of all employees in hazardous areas. Cessna's medical records consisted of forms claimant filled out at the time he took those examinations. The information thereon was conflicting. Respondent also presented a private investigator who testified she saw claimant smoking during the pendency of this action; claimant and two other witnesses disputed her testimony.

The district court announced its decision by way of letter memorandum. The court found that claimant had an occupational disease and that the disease was not emphysema. He found that Dr. Spann's training and experience was impressive, he being the only one of the four physicians who is board certified in the subspecialty of pulmonary diseases, the only one who has training in the effects of smoking and the cessation of smoking, and the only one who limits 90% of his practice to pulmonary and chest diseases. The court accepted Dr. Spann's testimony as the most credible and the most believable. The trial court found that the claimant's chronic bronchitis arose out of and in the course of his employment, and that he has suffered permanent total disability.

The issues raised on appeal deal extensively with the suffi-

ciency of the evidence. Before turning to the issues, we should state the scope of our review and certain applicable principles. K.S.A. 44-501 provides:

"In proceedings under the workmen's compensation act, the burden of proof shall be on the claimant to establish his or her right to an award of compensation by proving the various conditions on which his or her right depends."

K.S.A. 1983 Supp. 44-508(g) defines burden of proof, which reads:

" 'Burden of proof' means the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true."

K.S.A. 44-5a01 reads in part as follows:

"**Occupational diseases; treated as injuries by accident under workmen's compensation act; defined; limitations of liability; aggravations.** (a) Where the employer and employee or workman are subject by law or election to the provisions of the workmen's compensation act, the disablement or death of an employee or workman resulting from an occupational disease as defined in this section shall be treated as the happening of an injury by accident, and the employee or workman or, in case of death, his dependents shall be entitled to compensation for such disablement or death resulting from an occupational disease, in accordance with the provisions of the workmen's compensation act as in cases of injuries by accident which are compensable thereunder, except as specifically provided otherwise for occupational diseases.

"(b) 'Occupational disease' shall mean only a disease arising out of and in the course of the employment resulting from the nature of the employment in which the employee was engaged under such employer, and which was actually contracted while so engaged. 'Nature of the employment' shall mean, for purposes of this section, that to the occupation, trade or employment in which the employee was engaged, there is attached a particular and peculiar hazard of such disease which distinguishes the employment from other occupations and employments, and which creates a hazard of such disease which is in excess of the hazard of such disease in general. The disease must appear to have had its origin in a special risk of such disease connected with the particular type of employment and to have resulted from that source as a reasonable consequence of the risk. Ordinary diseases of life and conditions to which the general public is or may be exposed to outside of the particular employment, and hazards of diseases and conditions attending employment in general, shall not be compensable as occupational diseases: *Provided,* That compensation shall not be payable for pulmonary emphysema or other types of emphysema unless it is proved, by clear and convincing medical evidence to a reasonable probability, that such emphysema was caused, solely and independently of all other causes, by the employment with the employer against whom the claim is made, except that, if it is proved to a reasonable medical probability that an existing emphysema was aggravated and contributed to by the employment with the employer against whom the claim is made, compensation shall be payable for the resulting

condition of the workman, but only to the extent such condition was so contributed to and aggravated by the employment."

We note that under the proviso of 44-5a01(b), where the cause of the disability is pulmonary emphysema or other types of emphysema, the burden of proof is increased from a preponderance of the credible evidence to "clear and convincing medical evidence to a reasonable probability" that the employment, solely and independently of all other causes, was responsible for the disease or condition.

Judge Abbott has summarized the scope of appellate review in workers' compensation cases in the recent case of *Harris v. Cessna Aircraft Co.*, 9 Kan. App. 2d 334, 678 P.2d 178 (1984), as follows:

"If this court finds there is substantial competent evidence to support the finding of the trial court, the judgment will not be disturbed on appeal. *Day and Zimmerman, Inc. v. George*, 218 Kan. 189, 542 P.2d 313 (1975); *Boyd v. Yellow Freight Systems, Inc.*, 214 Kan. 797, 522 P.2d 395 (1974). Such evidence is defined as that which is relevant and which carries enough weight to allow one to conclude that the judgment is proper. *Hardman v. City of Iola*, 219 Kan. 840, 549 P.2d 1013 (1976). In determining whether the evidence is substantial and competent, the record is viewed in a light most favorable to the prevailing party. *Makalous v. Kansas State Highway Commission*, 222 Kan. 477, 565 P.2d 254 (1977); *Anderson v. Kinsley Sand & Gravel, Inc.*, 221 Kan. 191, 558 P.2d 146 (1976). If the evidence is substantial and competent, the ruling will be upheld even if there is evidence of record which supports contrary findings. *Phillips v. Helm's Inc.*, 201 Kan. 69, 439 P.2d 119 (1968). The negative findings of a trial court will seldom be set aside if the evidence is limited in quantity and its weight and credibility may be questionable, or if the evidence may be disregarded for any reason. *Davis v. Rock Island Oil Co.*, 211 Kan. 201, 505 P.2d 694 (1973); *Harrell v. J. S. Frank Construction Co.*, 210 Kan. 548, 502 P.2d 762 (1972)." pp. 334-35.

We now turn to the first issue. Cessna and The Hartford contend that the trial court misinterpreted and misapplied K.S.A. 44-5a01. Appellant argues that the court should interpret "emphysema" in a very broad sense and not in a strict medical sense. Appellants point out that the term "obstructive airway disease" is a term that is associated in the public mind with the term emphysema; thus, appellants contend that this court should adopt a broad definition of emphysema, broad enough to encompass any obstructive airway disease, including bronchitis. Dr. Hart explained that bronchitis is "inflammation of the mucosa, which is the lining of the airways of the lung. It becomes

inflamed and swells and causes obstruction." It generally is treatable. Emphysema, on the other hand, refers to the permanent destruction of lung tissue, a process that is not reversible. Dr. Hart agreed that in common parlance, the term "mild emphysema" could be used to describe the claimant's condition, but it is clear from his testimony that he preferred the term "airway obstructive disease," and that he diagnosed claimant as having bronchitis, not emphysema.

Dr. Spann, whose testimony was found to be most convincing to the trial court, diagnosed the claimant as having chronic obstructive pulmonary disease with chronic bronchitis. As to emphysema, Dr. Spann expressed the opinion that claimant probably does not have emphysema and that his predominant disease is not emphysema but chronic bronchitis. He explained that emphysema differs from chronic bronchitis clinically in some respects. In emphysema, the clinical manifestations are shortness of breath, little cough, little wheeze, and little noise in the chest. The patient tends to be thin, and tends to maintain blood gases which are near normal until terminally ill. In chronic bronchitis, the patient tends to be a little overweight, a little more ruddy, has episodes of congestive failure throughout the course of the disease, and has more cough, wheeze and noise in the chest. Dr. Spann defines emphysema as destruction of the lung tissue. Bronchitis is defined as an inflammation causing narrowing of the bronchial tubes, which fill with mucus and restrict the flow of air. English language, medical, and legal dictionaries—Webster's Third New International Dictionary, American Heritage Dictionary of the English Language, Dorland's American Illustrated Medical Dictionary, and Stedman's Medical Dictionary (Fourth Unabridged Lawyers' Edition)— give definitions of emphysema and bronchitis which, while more detailed, agree generally with those given here. Emphysema is a medical term. We see no reason to expand the definition of that term, as used in the statute, to encompass conditions or diseases beyond those ordinarily included in the English language dictionary definitions. If the legislature intends that the proviso apply to all airway obstructive diseases, it may do so. We decline to extend the present statutory language. The trial court did not misinterpret or misapply the statute. There is substantial competent evidence in the record to support the trial court's finding

that the claimant does not have emphysema. The proviso of K.S.A. 44-5a01(b) is therefore inapplicable under the facts of this case. Claimant's burden of proof was therefore the familiar preponderance of evidence, applicable in most civil cases and compensation proceedings.

Appellants next contend that the trial court committed prejudicial error in placing the burden of proof upon them. The trial court in its memorandum letter said:

"The court is of the opinion that the provisions of this statute [K.S.A. 44-5a01(b)] are a defense to what otherwise might be a compensable claim. The burden of proof, therefore, should be on the Respondent and Insurance Carrier if they wish to take advantage of this defense and prove that the Claimant had emphysema."

The burden of proof, as we noted above, is upon a claimant to establish his or her right to an award of compensation. Once a claimant demonstrates a compensable injury and offers and introduces credible evidence that he or she is not suffering from emphysema, then, if the respondent contends that the condition *is* emphysema, the burden of persuasion shifts to the respondent. While the trial court used the phrase "burden of proof" instead of "burden of persuasion," the trial court was speaking of the burden carried by an employer, respondent or insurance carrier desiring to establish emphysema as a defense. Though the trial court's language was technically incorrect, a careful reading of its letter memorandum discloses no prejudicial error. In the trial court's view, the plaintiff established his right to an award of compensation by establishing by a preponderance of the evidence that he had an occupational disease which was not emphysema. The burden of persuasion then shifted to the respondent and the insurance carrier, to establish that the claimant *was* suffering from emphysema; upon consideration of all the evidence the trial court deemed that the claimant was not.

Appellants next contend that the trial court erred in ruling that certain medical records of Cessna and the Veterans Administration were inadmissible. The record, however, indicates that the trial court admitted those records into evidence. The rules of evidence, K.S.A. 60-401 *et seq.*, are not applicable in workers' compensation proceedings. *Pence v. Centex Construction Co.,* 189 Kan. 718, 724, 371 P.2d 100 (1962); *Dean v. Hodges Bros.,* 170 Kan. 333, 335, 224 P.2d 1028 (1950); *Hall v. Armour & Co.,* 153 Kan. 656, 659, 113 P.2d 145 (1941). The admissibility of

evidence is more liberal in compensation cases, not more restrictive. The medical records offered in this case were properly admitted into evidence.

Appellants further contend that because the trial judge expressed the opinion that the records were not admissible, the judge did not give them proper consideration. To the contrary, the judge indicated that he attempted to examine very carefully the medical records of Cessna, as well as those of the Veterans Administration. In his letter memorandum, the judge discusses the records at length and eventually finds them to be of little value. The record below clearly indicates that the records were in fact admitted into evidence and were carefully considered by the trial court. There was no error.

Next, appellants contend that there was no substantial competent evidence to support the trial court's finding that claimant's case is compensable. They break this down into four subissues, all dealing with the sufficiency of the evidence. The first claim is that there was no substantial competent evidence that claimant was engaged in an occupation or employment which exposed him to a special risk. To the contrary, the claimant and three of his coemployees testified that there was a lot of painting going on where the claimant worked; that the air was sometimes foggy and so thick you could not see the other end of the department. The exhaust system was not adequate. There was testimony that polyurethane as well as enamel and lacquer paints and ketone thinners were being used. One of the coemployees testified that other employees in the same department have suffered some lung problems, and that OSHA had instructed the department to cut down the painting. Finally, a Cessna nurse testified that the company required annual physicals for employees who worked in areas that were considered most hazardous. Claimant was one of those required to take an annual physical examination. There was ample substantial and competent evidence to support the trial court's finding that claimant was engaged in an occupation or employment which exposed him to a special risk, a special and peculiar hazard of the disease from which the trial court found he suffers.

Second, appellants contend that there was not substantial competent evidence to support the trial court's finding that

claimant did not suffer from emphysema. We have discussed this previously and find this issue to be without merit.

Third, appellants claim that there is not substantial competent evidence to support a finding that claimant's condition was caused solely by his employment. They argue that he has not established this by clear and convincing medical evidence. This argument presupposes a finding of emphysema. Since the trial court found that claimant does not have emphysema, the proviso of K.S.A. 44-5a01(b) is inapplicable. Claimant's burden was to establish his claim and entitlement to an award of compensation by a preponderance of the evidence. The trial court found that he had met this burden and we agree. Appellants also argue that claimant has failed to sustain his burden of showing that his disability was due solely and independently of all other causes to his work environment. This argument is premised upon the appellants' erroneous assumption that claimant has emphysema and that the proviso is applicable. We need not pursue this argument further.

Finally, concluding their argument on this point, appellants contend that there is no substantial competent evidence to support an award to the claimant based upon an aggravation of his condition by his employment. This argument also assumes a finding of emphysema and the applicability of the proviso. The trial court found no emphysema and did not base the award upon an aggravation of a preexisting condition.

Appellants next contend that there was no substantial competent evidence to support the district court's finding that claimant is entitled to a permanent total disability award. In support of this contention they cite *Schubert v. Peerless Products, Inc.,* 223 Kan. 288, 573 P.2d 1009 (1978), in which we held that scheduled injuries as listed in K.S.A. 44-510d are not applicable to occupational disease cases, and that compensation in those cases should be computed on the basis of diminished earning capacity. While the trial court here did not enunciate the *Peerless Products* rationale, the trial court found the claimant to be totally disabled. There is no evidence that claimant was employed at the time of the hearing, and there was competent evidence that he will not be employable in the future. Thus, while the trial court erred in not stating the basis for its award in terms of diminished earning capacity, it did not err in its conclusion and award. By virtue of

being totally disabled and unable to work, claimant's earning capacity was destroyed. The error was harmless.

Finally, appellants contend that the trial court erred in failing to assess all or part of the award against the Workers' Compensation Fund. The issue here is whether or not Cessna knowingly retained a handicapped employee. K.S.A. 1983 Supp. 44-567. The burden of proof on this issue is on the employer. *Carter v. Kansas Gas & Electric Co.*, 5 Kan. App. 2d 602, Syl. ¶ 1, 621 P.2d 448 (1980). The trial court held that Cessna did not sustain its burden of proof on this issue. This amounts to a negative finding. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice, a negative finding of a trial judge cannot be disturbed. *Brown v. Lang*, 234 Kan. 610, Syl. ¶ 5, 675 P.2d 842 (1984); *Hinton v. S. S. Kresge Co.*, 3 Kan. App. 2d 29, Syl. ¶ 4, 592 P.2d 471 (1978), *rev. denied* 225 Kan. 844 (1979).

In its decision, the trial court acknowledged that there was evidence that Cessna had knowledge as far back as 1972 that the claimant had bronchitis. Does this amount to knowledge of a preexisting physical impairment, disorder or disease? (See K.S.A. 1983 Supp. 44-566.) The trial court, upon evidence, found that occupational disease such as chronic bronchitis develops over a period of time. It developed in the claimant at least from 1972 through February 15, 1977.

K.S.A. 1983 Supp. 44-567 requires, before compensation shall be paid from the Workers' Compensation Fund, that there be a finding that the disability "probably or most likely would not have occurred but for the preexisting physical . . . impairment . . . ." Thus, in the case at hand, in order for benefits to be charged to the Workers' Compensation Fund, there must be a finding that the claimant's chronic bronchitis would not have occurred but for the preexisting bronchitis. As the trial court pointed out, if the court were to hold that the previous bronchitis was a preexisting disability then, in all workers' compensation cases involving occupational diseases, if the employer has one day's notice of the disease prior to the date of disablement the entire liability would fall upon the Fund. This would have the practical effect of shifting liability for all occupational disease awards to the Fund. This is not the intent of the statutes creating the Workers' Compensation Fund. While the employer here had knowledge of some minimal bronchitis, there is no

evidence that claimant, in 1972, fit the legislative definition of a "handicapped employee," as that term is defined in K.S.A. 1983 Supp. 44-566. It does not appear that the court arbitrarily disregarded undisputed evidence in finding that Cessna did not meet its burden of proof on this issue.

K.S.A. 1983 Supp. 44-566 defines a "handicapped employee" as:

"[O]ne afflicted with or subject to any physical or mental impairment, or both, whether congenital or due to an injury or disease of such character the impairment constitutes a handicap in obtaining employment or would constitute a handicap in obtaining reemployment if the employee should become unemployed . . . ."

There is no evidence establishing that a person having bronchitis, not chronic but mild, slight or minimal, as claimant did in 1972, would be handicapped in obtaining or in retaining employment. Likewise, there is no evidence that Cessna considered terminating or transferring the claimant to a less hazardous department because of his physical condition at the time of his 1972 examination, or that Cessna would not have hired a person in similar health. We agree with the trial court that under the evidence claimant was not a "handicapped" employee. The trial court did not err in refusing to assess the award or a portion of it on the Workers' Compensation Fund.

We have carefully considered all issues raised by the respondent and its insurance carrier, the appellants, and find no reversible error.

The judgment is affirmed.