No. 75,703
MICHAEL G. NANCE, *Appellant,* v. HARVEY COUNTY and
NORTHWESTERN NATIONAL CASUALTY, *Appellees.*
(952 P.2d 411)

Opinion filed December 30, 1997.

*Steven L. Foulston*, of Wichita, argued the cause and was on the brief for appellant.

*James A. Cline*, of Law Office of James A. Cline, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is a workers compensation appeal. Michael Nance, an employee of Harvey County, was injured while working within the course and scope of his employment. He was awarded temporary total disability, permanent general body disability, and permanent partial general body disability as a result of this injury. He moved for review and modification of the award pursuant to K.S.A. 44-528. Upon review, evidence established that his condition had worsened. The administrative law judge (ALJ) awarded additional compensation. The Workers Compensation Board (Board) reversed, concluding the worker did not establish causation with regard to his worsened condition and that the worsened

condition was attributable to the normal aging process. We affirm the Court of Appeals' decision reversing the Board.

## Facts

On April 20, 1990, Nance was working for Harvey County. He was unloading a stack of bridge planks when the stack began to fall. Nance prevented the stack from falling. He did not notice any physical problems at that time. Approximately 30 minutes later, after working underneath a truck, he found he could not get off the creeper. When he finally could get up, he was in pain. There is no dispute that Nance was injured while working within the course and scope of his employment with Harvey County.

Harvey County paid Nance compensation for temporary total disability and medical treatment/benefits. On February 14, 1994, the ALJ found that Nance sustained a 9% permanent partial general bodily disability as a result of his injuries. Nance requested a review by the Board. On July 28, 1994, the Board issued its decision. In discussing the matter, the Board noted:

"[C]laimant's attitude, potential misrepresentation and apparent lack of effort creates an unreliable record from which to assess the claimant's abilities in either performing work in the open labor market or earning comparable wages. The opinion of two qualified treating physicians that claimant was intentionally attempting to mislead them coupled with the security testimony provided by Barbara Steil of Silver Hawk Investigators and claimant's attempted manipulation when tested on the Cybex machine creates a record so clouded as to make it impossible to assess what, if any, work disability may or may not exist in this matter."

Nevertheless, the Board found Nance had sustained a 3.5% permanent partial impairment to the body as a whole on a functional basis. He was awarded temporary total disability, permanent general body disability, and permanent partial general body disability in the total amount of $35,132.83.

Nance appealed the decision to the Court of Appeals, arguing only that the Board was unconstitutional. Pursuant to *Sedlak v. Dick*, 256 Kan. 779, 887 P.2d 1119 (1995), the Court of Appeals in an unpublished decision sustained Nance's appeal, vacated the Board's decision, and remanded the case to the newly constituted

Board for a rehearing. On November 9, 1995, the Board adopted its previous decision that Nance had sustained a 3.5% permanent partial functional impairment.

During the pendency of his first appeal, Nance filed a motion for post-award medical treatment on July 21, 1994. Nance's motion was granted, and he received treatment from Dr. Anthony G. A. Pollock.

Soon thereafter, on January 27, 1995, Nance filed a motion for review and modification pursuant to K.S.A. 44-528. K.S.A. 44-528 permits modification of awards in order to conform to changed conditions. This statute was intended to permit modification of awards when the condition of an injured employee either improves or worsens after the original hearing and award. See *Brandt v. Kansas Workers Compensation Fund,* 19 Kan. App. 2d 1098, Syl. ¶ 2, 880 P.2d 796, *rev. denied* 256 Kan. 994 (1994). In his motion for modification, Nance alleged that his functional impairment and work disability had increased since receipt of the original award. It is this motion for review and modification that forms the substance of this appeal.

In support of his motion, Nance introduced the deposition testimony of Dr. Pollock, who testified that he had examined Nance. Dr. Pollock indicated that Nance had come to him complaining of pain in his right shoulder and lower back as well as numbness and a burning sensation in his toes. Dr. Pollock had an MRI done, which revealed a bulging of the disc in the L5-S1 area. The bulging was obviously greater than in the 1990 MRI. Dr. Pollock stated that in his opinion, Nance's back condition was significantly worse than it was in 1990. Dr. Pollock opined that the defendant now has a 7% permanent partial impairment of function to the body as a whole and needs certain permanent work restrictions as a result of his worsened condition. These work restrictions include (1) a limitation to occasional bending, *i.e.,* six times per hour; (2) lifting restrictions of 25 to 30 pounds occasionally and 15 to 20 pounds repetitively; and (3) no excessive twisting, pushing, or pulling heavy equipment, although Nance could push or pull a 40- to 45-pound load on an occasional basis.

On cross-examination, Dr. Pollock noted that the natural aging process could have been responsible for the worsening of Nance's back. Dr. Pollock admitted that even with the MRI, he could not be absolutely sure what caused the changes in Nance's back. However, he stated that with Nance's back injury, the degenerative changes involved were less surprising than they would be if Nance had had no prior history of back injury.

On redirect, Dr. Pollock stated that he had no reason to believe that Nance had suffered any injuries subsequent to the one in question. Dr. Pollock also stated that in his opinion, Nance had suffered some changes in his L5-S1 disc in 1990, consistent with his claimed injury at that time, and that the disc condition had gotten worse. Dr. Pollock testified that the problem Nance is experiencing now was the same problem as in 1990, only worse.

Jerry Hardin, a personnel placement expert, testified concerning Nance's loss of ability to perform work in the open labor market and ability to earn comparable wages. Hardin stated that as a result of the new restrictions advocated by Dr. Pollock, Nance would suffer a 55 to 60% loss of jobs he could perform as opposed to the 45 to 55% loss he suffered from the injury in 1990. Further, Hardin testified that Nance would suffer a 35% loss of wage earning ability as compared to the 9% loss from the 1990 injury.

Nance also testified. He stated that his back condition had gotten worse, especially within the last year. He denied experiencing any further injuries to his lower back. Harvey County did not submit any evidence.

On July 19, 1995, the ALJ issued an award increasing Nance's permanent partial general body disability to 50%. The ALJ found: "The only evidence offered on the issues herein is that offered by claimant. The opinions of Dr. Anthony G. A. Pollock and of Mr. Jerry D. Hardin are found to be reasonable, are not improbable, are not contradicted and therefore are adopted as fact." Nance's award was increased to a total amount of $65,399.71.

Harvey County filed for review before the Board. The Board reversed the ALJ's award, concluding that Nance had failed to prove by a preponderance of credible evidence that his worsened condition was related to the injury he suffered on April 20, 1990,

and, as such, denied his request for review and modification. The Board stated:

"The only medical evidence dealing with claimant's increased symptomatology comes from Dr. Anthony Pollock. Dr. Pollock, a board-certified orthopedic surgeon, had the opportunity to examine and treat claimant both for the 1990 injury and for the 1994 condition. [NOTE: There is no evidence that Dr. Pollock treated Nance for the 1990 injury.] While he noted the MRIs performed on claimant in October, 1994 showed a definite increase in the disc herniation at L5-S1, Dr. Pollock had significant difficulty attributing this progressive condition to claimant's 1990 injury. He was asked specifically the cause of this increased condition and testified at various places in the transcript that the condition was caused by progressive degenerative disc disease, or possibly from the natural aging process; in another place he testified that he did not know what the cause was but he felt it may be the natural aging process; and finally he testified that he was not sure if it was caused by the injury or the natural aging process. The Appeals Board finds Dr. Pollock cannot relate claimant's worsened condition to the 1990 work-related injury."

The Board determined that Nance still retained his entitlement to the award entered by the Board on July 28, 1994.

Nance appealed this decision to the Court of Appeals, which concluded that undisputed evidence established that Nance's back condition had worsened. 23 Kan. App. 2d at 904. The Court of Appeals stated that under the direct and natural consequences rule, the worsening of a claimant's compensable injury, absent any intervening or secondary injury, is a natural consequence that flows from the injury and is thus compensable. The Court of Appeals also found that under a negative finding standard of review, the Board had incorrectly disregarded the fact that there was no evidence of an intervening or secondary cause and that the evidence was sufficient to entitle Nance to compensation. Accordingly, the Court of Appeals reversed the decision of the Board and reinstated the ALJ's award. 23 Kan. App. 2d at 909.

## Normal Aging Process

Harvey County claims that the Court of Appeals erred in holding that the effect of the normal aging process upon an injury is a natural and probable consequence of the primary injury. Harvey County contends that this finding is in conflict with the decision

of this court in *Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 504 P.2d 625 (1972). Further, Harvey County contends that allowing recovery for the natural aging process will result in an "inevitable flood of claims."

Harvey County's reliance on *Boeckmann* is misplaced. In *Boeckmann*, the plaintiff, Adolph H. Boeckmann, was employed by Goodyear for some 16 years in the capacity of a special classifier and an inspector of truck and tractor tires. Over time, because of diseased hips, the claimant became disabled. His condition did not result from any identifiable injury occurring on the job within the scope of his employment. Rather, Boeckmann's hip condition was aggravated by engaging over the years in activities common to all workers. The disability was not caused by Boeckmann's job, but instead his condition deteriorated because of the normal aging process. In affirming the decision of the district court denying compensation, we·said:

"The claimant would have this court hold that the ordinary movements and motions of his daily work, the bending, stooping and twisting as he puts it, were tantamount to a continuous series of minuscule accidents which eventually, over the years, culminated in his permanent disability, thus entitling him to compensation as from a work-related accident. This contention essentially amounts to a argument that the physical, commonplace, day to day activities of a person's employment, whatever they may be, as they continue to nibble and wear away the bones, joints and tissues which once were strong and sturdy in the early days of youth bring in their wake an endless succession of minute compensable accidents unrelated to time, place or circumstance. In our opinion this philosophy is not encompassed within the boundaries of the Workmen's Compensation Act and we decline to give the act such a construction." 210 Kan. at 739.

Unlike the worker in *Boeckmann,* Nance sustained a back injury in 1990 while working for Harvey County, for which he received a workers compensation award. The subsequent worsening of his back condition is by the medical testimony related to this original injury. The parties agreed in this case that the original injury is not the result of the normal aging process and was born of his employment. See *Boeckmann,* 210 Kan. at 736. Our reasoning in *Boeckmann* is therefore not applicable to Nance's claim for modification.

Under the facts of this case, we must consider the general and universal rule of workers compensation, which is that when an initial medical condition itself progresses into complications more serious than the original injury, the added complications are compensable. 1 Larson, The Law of Workmen's Compensation § 13.11(a) (1996). In commenting on this rule, Professor Larson notes:

"Moreover, once the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause. This may sound self-evident, but in close cases it is sometimes easy to overlook this essentially simple principle." 1 Larson, § 13.11(a), pp. 3-609-16.

Kansas has recognized this natural and probable consequences rule. See *Reese v. Gas Engineering & Construction Co.*, 219 Kan. 536, Syl. ¶ 4, 548 P.2d 746 (1976); *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, Syl. ¶ 5, 547 P.2d 751 (1976); *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, 688, 527 P.2d 1044 (1974); *Jackson v. Stevens Well Service*, 208 Kan. 637, 643, 493 P.2d 264 (1972). In *Jackson*, we stated the rule as follows:

"[W]hen a primary injury under the Workmen's Compensation Act is shown to have arisen out of and in the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury." 208 Kan. at 643.

Although the cases cited above concern factual situations in which the claimant suffered a new and distinct injury rather than an aggravation of a previous injury as is the case here, there is no doubt that the natural and direct consequences rule applies in the instant case. In *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 262, 505 P.2d 697 (1973), we noted that while the natural and probable consequences rule would not apply to a situation where the increased disability results from a new and separate accidental injury, "[t]he rule in *Jackson* would apply to situation where a claimant's disability gradually increased from a primary accidental injury."

An illustration of the application of the natural and probable consequences rule to a situation similar to the one at hand is found

in *International Paper Co. v. Tuberville*, 302 Ark. 22, 786 S.W. 2d 830 (1990), a case cited by the Court of Appeals. In *Tuberville*, the claimant was awarded permanent partial disability benefits of 55% as a result of two accidents which caused an anatomical impairment of 25% of the body as a whole. By 1984, the claimant's physician increased the anatomical impairment to 40% as a whole, and the claimant requested an increase in award. The Arkansas Workers Compensation Commission found that the increase in disability was the natural result of aging and denied an increase. However, the Arkansas Supreme Court disagreed, noting that the evidence clearly disclosed that the claimant's worsened condition resulted from the natural process of aging acting upon the claimant's prior compensable condition and was therefore compensable. 302 Ark. at 28.

Contrary to Harvey County's assertions, the application of the natural and probable consequences rule will not open the floodgates to claims. In order for the deterioration of an injury to be compensable, the increase in disability must be shown to be a direct and natural result of the primary injury. See *Jackson*, 208 Kan. at 643. The passage of time in and of itself is not a compensable injury. Thus, where the deterioration would have occurred absent the primary injury, it is not compensable. However, where the passage of time causes deterioration of a compensable injury, the resulting disability is compensable as a direct and natural result of the primary injury.

## Standard Of Review

Harvey County contends that the Court of Appeals, although recognizing that the Board's ruling constituted a negative finding, instead looked at the finding to determine whether it was supported by substantial competent evidence rather than reviewing it to determine whether the Board arbitrarily disregarded undisputed evidence or was motivated by bias, passion, or prejudice.

In determining this issue, it is helpful to review the appeals process in workers compensation cases. Since 1993, the decision of the ALJ is subject to review by the Board, and such review is a prerequisite for appeal. K.S.A. 1996 Supp. 44-551(b)(1). The Board

has the power to review both questions of law and fact. K.S.A. 1996 Supp. 44-555c(a). The Board's determination is then appealable directly to the Court of Appeals, which is limited to reviewing questions of law in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* See K.S.A. 1996 Supp. 44-556(a). Thus, under the Act, the Court of Appeals may only grant relief if it determines that

"(1) [t]he agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c).

In the instant case, the question on review was whether the Board's determination of fact that Nance had not met his burden was supported by the evidence as a whole. This is a negative finding of fact and therefore will not be disturbed absent an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. See *Box v. Cessna Aircraft Co.*, 236 Kan. 237, 246, 689 P.2d 871 (1984). This is the standard the Court of Appeals should have used.

The Court of Appeals was not entirely clear as to which standard it actually used. At one point, the Court of Appeals noted the standard for a negative finding of fact. 23 Kan. App. 2d at 901-02. However, the Court of Appeals had also previously noted the standard of review for positive findings of fact, *i.e.*, whether the Board's finding is supported by substantial competent evidence. 23 Kan.

App. 2d at 901. Further, the Court of Appeals' conclusion is also rather confusing as it speaks to both standards:

"The record does not indicate there is substantial evidence to support the Board's decision. Under a negative finding standard of review, the Board may have recognized the evidence that Nance's condition had worsened, but incorrectly disregarded the fact that there was no evidence of an intervening or secondary cause. This evidence is sufficient to entitle Nance to workers compensation benefits for his increased injury." 23 Kan. App. 2d at 909.

As stated above, the Court of Appeals should have examined the record to determine whether in reaching the conclusion that Nance had failed to prove that his deteriorated condition was a direct and probable consequence of his injury, the Board arbitrarily disregarded uncontroverted evidence or was motivated by some extrinsic consideration such as bias, passion, or prejudice. See *Box*, 236 Kan. at 246. We now apply that standard to the evidence presented.

It is undisputed that, at the time of the original compensable injury, Dr. Pirner diagnosed Nance as having a cervical strain/sprain and a lumbar strain/sprain with degenerative disc disease at L5-S1, confirmed by x-ray. This diagnosis was later verified by Dr. Poole's MRI in May 1990 and Dr. Marsh's MRI in August 1990. Although Harvey County spends a large amount of time in its petition for review arguing that these initial diagnoses were the result of Nance's lying and manipulation of the workers compensation system, the fact remains that Nance received an award on the basis of this injury which, although reduced, was affirmed by the Board. Issues which were previously determined as the result of the first award may not be relitigated, with the exception of changes in the claimant's disability at the present time. See *Randall v. Pepsi-Cola Bottling Co., Inc.*, 212 Kan. 392, 396-97, 510 P.2d 1190 (1973); *Brandt*, 19 Kan. App. 2d at 1101. Therefore, we may not now reconsider the question of the extent of Nance's injury in 1990.

In 1994, Dr. Pollock performed an MRI, and it showed that Nance's degenerative disc disease had significantly worsened, *i.e.*, the bulging at the L5-S1 disc had become larger. Dr. Pollock was of the opinion that Nance's back condition was significantly worse than it was in 1990. Dr. Pollock opined that Nance now has a 7% permanent partial impairment of function to the body as a whole

and needs certain additional permanent work restrictions as a result of his worsened condition.

When asked as to the cause of this deterioration, Dr. Pollock noted that the natural aging process could have been responsible for the worsening of Nance's back. Although Dr. Pollock admitted that even with the MRI, he could not be absolutely sure what caused the changes in Nance's back, he stated that with Nance's back injury, the degenerative changes involved were less surprising than they would be if Nance had had no prior history of back injury. Dr. Pollock stated that he had no reason to believe that Nance had suffered any injuries subsequent to the one in question. In Dr. Pollock's opinion, Nance had suffered some changes in his L5-S1 disc in 1990 consistent with his claimed injury at that time, and the disc condition had gotten worse. Dr. Pollock stated that the problem Nance is experiencing now is the same problem as in 1990, only worse.

Although Dr. Pollock does not directly affirmatively state that the deterioration of Nance's injury is a direct and natural consequence of the first injury, such a conclusion is the inevitable result of his testimony. Only by disregarding this testimony could the Board have found that "Dr. Pollock cannot relate claimant's worsened condition to the 1990 work-related injury."

The situation at hand is quite similar to that in *Tuberville*, 302 Ark. 22. In that case, the Arkansas Workers Compensation Commission denied an increase in an award on the basis that the increased disability was due to the aging process rather than changes in the claimant's condition resulting from the prior compensable injury. As noted above, the Arkansas Supreme Court disagreed with the Commission. In discussing the evidence, the Arkansas Supreme Court stated:

"It was apparent to the court of appeals, as it is apparent to us, that the commission incorrectly interpreted the only evidence before it as showing that the increased impairment to Tuberville was due solely to the aging process. The court of appeals reviewed the testimony and held that fair minded persons could not read it and conclude anything but that it was the industrial injury combined with the aging process which caused the expenses for which compensation is being sought.

"The unanimous decision of the court of appeals panel was correct. Dr. Chakales's testimony cannot be read without noting his specific statement that it was

'the fact that he had had the previous surgery with the normal progression of the aging process' which caused the spinal stenosis resulting in surgery and that the condition was not new but was a progression of the 'preexisting condition.'

"When the entire deposition of Dr. Chakales is read, it becomes even more apparent that fair minded persons could not conclude he attributed Tuberville's condition necessitating the surgery to anything other than the previous condition of his back which was the direct result of the injury he suffered years ago.

"Throughout his testimony Dr. Chakales spoke of the previous surgery he had done as the result of the injury Tuberville had received. It is impossible to read the testimony and conclude that aging alone was the cause of the current need for compensation. In his cross examination of the doctor, counsel for [the employer], for good reason, did not ask whether the effect of the aging process of which the doctor spoke would have produced Tuberville's present condition absent the previous injury and resulting surgery.

"In arguing the case, [the employer] has raised the specter of any previously injured employee being compensated merely because the aging process common to all may cause medical problems. We make no such absurd decision here. We hold that the commission was mistaken because we can find no support for its interpretation of the evidence before it. The only evidence showed clearly that the claim was predicated upon a showing that the increased disability was a natural consequence flowing from the previous injuries." 302 Ark. at 28-29.

The reasoning in *Tuberville* is applicable to the case at hand. There is simply no conclusion to be drawn from Dr. Pollock's testimony but that the deterioration of Nance's back is the result of the earlier compensable injury.

It is clear that Nance is not the most appealing of workers compensation claimants. His actions at the time of the original injury showed at least an inference of falsification, malingering, and manipulation. Nevertheless, the Board is not free to arbitrarily disregard uncontroverted evidence. In this case, the uncontroverted evidence showed that the deterioration of Nance's back was the result of his earlier compensable injury and was therefore compensable, and the Court of Appeals did not err in so finding.

The decision of the Court of Appeals reversing the decision of the Board is affirmed, and the ALJ's award is reinstated.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.

McFARLAND, C.J., dissenting: It is undisputed the burden of proof is on the claimant to show the injury is compensable. The Workers Compensation Board, in reversing the ALJ's award, concluded that Nance failed to carry this burden, stating:

"The only medical evidence dealing with claimant's increased symptomatology comes from Dr. Anthony Pollock. Dr. Pollock, a board-certified orthopedic surgeon, had the opportunity to examine and treat claimant for both the 1990 injury and for the 1994 condition. While he noted the MRIs performed on claimant on October, 1994 showed a definite increase in the disc herniation at L5-S1, Dr. Pollock had significant difficulty attributing this progressive condition to claimant's 1990 injury. He was asked specifically the cause of this increased condition and testified at various places in the transcript that the condition was caused by progressive degenerative disc disease, or possibly from the natural aging process; in another place he testified that he did not know what the cause was but he felt it may be the natural aging process; and finally he testified that he was not sure if it was caused by the injury or the natural aging process. The Appeals Board finds Dr. Pollock cannot relate claimant's worsening condition to the 1990 work-related injury."

In Syl. ¶ 7, the majority states, "A negative finding of fact will not be disturbed on appeal absent an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice." This is the standard under which we review the evidence in this case.

Under this standard of review, the record supports the Board's findings, even as that record is summarized by the majority. Dr. Pollock testified that the worsening condition of Nance's back could have been the result of the natural aging process. He was uncertain, even with the MRI, whether the primary injury was the cause of the changes in Nance's back. The Board relied on this evidence in reaching its conclusion that claimant had not met his burden of proof relating his present condition to the prior injury.

From this same evidence, the majority reaches the "inevitable" conclusion that the deterioration of Nance's back injury was a "direct and natural consequence of the first injury." This is a distortion of Dr. Pollock's testimony and of the majority's own narration of that testimony. This "inevitable" conclusion was controverted by the only medical expert testifying on causation, Dr. Pollock. The majority then states: "There is simply no conclusion to be drawn

from Dr. Pollock's testimony but that the deterioration of Nance's back is the result of the earlier compensable injury." It is unlikely even Dr. Pollock would agree with that characterization of his testimony. Dr. Pollock's testimony that the deterioration could have been from the natural aging process was the testimony upon which the Board based its findings that claimant has failed to carry his burden of proof. Thus, the evidence on causation was not "undisputed evidence." Under such circumstances, there can be no "arbitrary disregard of undisputed evidence." With the limited scope of appellate review accorded negative findings, an appellate court is precluded from disturbing the Board's findings on the record herein.

In reaching the conclusion that it does here, the majority alters the burden of proof by, in essence, requiring respondent to prove some intervening cause is responsible for the changed condition. Further, a reviewing court is not at liberty to reweigh the evidence, as I believe the Court of Appeals did and as the majority herein is approving.

I would reverse the judgment of the Court of Appeals and affirm the decision of the Board.

SIX, J., joins the foregoing dissent.