(593 P.2d 1009)

No. 50,314

SAFEWAY STORES, INC., and TRAVELERS INSURANCE COMPANY, *Appellants,* v. WORKERS' COMPENSATION FUND, *Appellee.*

Opinion filed April 27, 1979.

*Rex G. Beasley,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, for appellants.

*H. Allan Caldwell,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, for appellee.

Before SPENCER, P.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is a workers' compensation appeal by an employer (Safeway) and its insurance carrier (Travelers) from a judgment that the workers' compensation fund (Fund) was not timely made a party to this action as required by K.S.A. 1978 Supp. 44-567(c) (formerly 1976 Supp. 44-567[d]). The claimant, Fred Godesky, is not a party to this appeal, and the nature, extent and compensability of his injury are not in dispute. Accordingly, this case presents questions of law and not of fact, leaving many of the general workers' compensation standards of review inapplicable.

Prior to his employment by Safeway in 1974, the claimant filled out an employment application in which he denied having any previous back trouble. He also denied that he had been under the care of a doctor at any time during the previous five years. On July 5, 1975, and while during the course of his employment with Safeway, claimant slipped and fell, injuring his back. He required hospitalization and has been unable to work since then.

At the initial hearing on February 5, 1976, stipulations were taken pursuant to K.A.R. 51-3-8 (1978). Claimant also testified at the initial hearing, and denied having any back problems prior to his employment with Safeway. He did admit to having seen a

doctor for a pain in his neck in 1974, but denied that the doctor told him he had an ongoing back problem. Five months later the initial deposition of Dr. Frederick Wolfe was taken, with the doctor testifying that he had treated claimant for ankylosing spondylitis (a congenital defect of the vertebra) in 1974, and that his present condition was due to the aggravation of a pre-existing condition.

Safeway and Travelers filed a notice on August 3, 1976, impleading the Fund. The Fund entered its appearance without objection on August 11, 1976, and it was not until August 15, 1977, that the Fund objected to the timeliness of its being impleaded.

The examiner found the claimant was permanently and totally disabled, and in addition found that the Fund had been properly impleaded. He found the disability was totally due to the aggravation of a pre-existing condition and assessed all of the award to the Fund. On review the director found that the Fund was not timely impleaded pursuant to K.S.A. 44-567(c), in that the hearing held on February 5, 1976, at which stipulations were taken and the claimant testified, constituted "the first full hearing where any evidence is presented on the claim." The director modified the award to provide that all the compensation and medical expenses were to be paid by Safeway and Travelers.

On appeal to the district court, the trial judge affirmed, ratified and adopted in all respects the award entered by the workers' compensation director.

Safeway and Travelers appeal, raising two issues. They first claim that the Fund, by entering its appearance and unconditionally defending the claim for over a year without objection, waived its right to object and is estopped to assert that it was not given timely notice. However, that issue was not presented at trial for determination by the trial court, and a litigant may not present matters or issues on appeal which were not raised before the trial court. *Goff v. American Savings Association,* 1 Kan. App. 2d 75, 78, 561 P.2d 897 (1977); *Landrum v. Taylor,* 217 Kan. 113, 120, 535 P.2d 406 (1975).

The sole remaining issue in this case involves the construction of K.S.A. 1978 Supp. 44-567(c), which reads in pertinent part as follows:

"An employer shall not be relieved of liability for compensation awarded nor

shall he or she be entitled to an apportionment of the costs thereof as provided in this section, unless the employer shall cause the commissioner of insurance, in his or her capacity as administrator of the workmen's compensation fund, to be impleaded . . . by giving written notice of the employee's claim to the commissioner of insurance prior to the *first full hearing where any evidence is presented on the claim.*" (Emphasis added.)

The parties' positions are relatively simple in concept. The Fund argues that the phrase "any evidence" means just that, and therefore the hearing on February 5, 1976, where stipulations were taken and the claimant testified, was the first full hearing within the meaning of the statute, leaving the Fund improperly impleaded nearly six months later. Safeway and Travelers argue that a "full hearing" did not occur until all of the evidence was presented and the claim submitted to the examiner on September 8, 1977.

It is also suggested that as the statute is procedural in nature, the Fund should be required to show prejudice, particularly in view of claimant having misrepresented his condition prior to the accident, leaving the employer unaware of the need to implead the Fund. See *e.g. Rybus v. Kruetzer Motor Express,* 298 Minn. 435, 215 N.W.2d 611 (1974); *Koshgarian v. Hawksley,* 90 R.I. 293, 157 A.2d 663 (1960). Travelers is in no position to rely on lack of knowledge. A reasonable person in Travelers' position had ample notice that claimant was afflicted with the congenital defect that it later sought to use as a basis for impleading the Fund. Dr. Wolfe wrote Travelers on December 2, 1975, over two months before the hearing on which the Fund relies as the first full hearing where evidence was presented. That letter states in full:

"I am treating Mr. Godesky for ankylosing spondylitis. It was felt that the injury that he suffered *reactivated* his previously quiescent disease. I have no details concerning Mr. Godesky's injury and the treatment that he received for it." (Emphasis added.)

Accordingly, if Safeway and Travelers are to prevail they must do so on the basis that the legislative intent in adopting K.S.A. 1978 Supp. 44-567(c) was that the Fund need not be impleaded until the claim is submitted to the examiner and oral argument presented or waived.

While we have no precise precedent of our own, and research discloses that the statute in question is unique to Kansas, we do have guidelines to look to in construing a statute. The fundamental rule of statutory construction, to which all others are

subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *State v. Dumler,* 221 Kan. 386, Syl. ¶ 1, 559 P.2d 798 (1977); *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, 552 P.2d 1363 (1976). In interpreting a statutory provision which is susceptible to more than one construction, it must be given that construction which when considered in its entirety gives expression to its intent and purpose. *United Parcel Service, Inc. v. Armold,* 218 Kan. 102, Syl. ¶ 2, 542 P.2d 694 (1975).

In determining legislative intent, courts are not limited to a mere consideration of the language employed, but may properly look to the historical background of the enactment, the circumstances attending its passage, the purposes to be accomplished, and the effect the statute may have under various constructions suggested. *Southeast Kansas Landowners Ass'n v. Kansas Turnpike Auth.,* 224 Kan. 357, 367, 582 P.2d 1123 (1978); *State v. Luginbill,* 223 Kan. 15, Syl. ¶ 2, 574 P.2d 140 (1977).

It has long been the law in Kansas that the worker's compensation law, which includes the Fund, is substantial, complete, and exclusive, and this Court must look to the procedure of the act for the methods of its administration. *Leiker v. Manor House, Inc.,* 203 Kan. 906, 457 P.2d 107 (1969); *Bushman Construction Co. v. Schumacher,* 187 Kan. 359, 356 P.2d 869 (1960).

Safeway and Travelers suggest that, in view of the legislative mandate that the act is to be given a liberal construction, we should liberally construe the statute in question to arrive at their viewpoint, and strongly suggest that to do otherwise would defeat the legislative intent to aid the physically handicapped in finding gainful employment. The rule of liberal construction of the workers' compensation act is applied in order to award compensation to a worker when it is reasonably possible to do so. The act is directed toward the worker and the standards are geared to the individual. *Chapman v. Wilkenson Co.,* 222 Kan. 722, 567 P.2d 888 (1977). Liberal construction is not afforded an employer against the Fund other than in those instances where a liberal construction would advance the legislative aim of encouraging the employment of handicapped persons. We do not see how Safeway's and Travelers' position would advance the legislative desire to employ handicapped workers. This decision would not affect those workers with a handicap that is not readily apparent

to an employer and who choose to misrepresent their past and present condition to an employer. It would not have an adverse effect on the employment of handicapped workers. While we abhor such misrepresentation, the legislature recognized that it does occur and chose not to penalize it, perhaps recognizing that handicapped people are discriminated against when they do disclose their hidden handicap. To reject Safeway's and Travelers' position would require diligence on the part of the employer to check the claimant's past medical history, but it would not affect the employment of handicapped persons.

The original "second injury fund" covered only total permanent disability and then only when the employer prior to the occurrence filed a notice with the director of such employment, together with a description of the handicap claimed. The procedural requirement of filing prior to the occurrence was deemed mandatory. *Leiker v. Manor House, Inc.,* 203 Kan. at 916. An amendment to the act in 1961 broadened coverage and did not limit second injuries to those causing total permanent disability. The concept has been broadened to protect an employer from an employee who knowingly:

"(1) Misrepresents himself or herself as not having such an impairment or handicap; (2) misrepresents himself or herself as not having had any previous accidents; (3) misrepresents himself or herself as not having previously been disabled or compensated in damages or otherwise because of any prior accident, injury or disease; (4) misrepresents himself or herself as not having had any employment terminated or suspended because of any prior accident, injury or disease; (5) misrepresents himself or herself as not having any mental, emotional or physical impairment, disability, condition, disease or infirmity; or (6) misrepresents or conceals any facts or information which are reasonably related to the employee's claim for compensation." K.S.A. 1978 Supp. 44-567(b).

An employer is thus protected under the statute when an employee, through ignorance or fear of not being employed, conceals an impairment or handicap, as long as it discovers the concealment and timely impleads the Fund prior to the first full hearing when any evidence is presented on the claim.

The phrase in question does not refer to "a full hearing," but to "the *first* full hearing." Appellants attempt to justify the use of "first" by arguing that there is a second full hearing on director's review and a third full hearing before the district court, and so forth. We do not so interpret the phrase. The phrase used refers to the *first* (presumably of several) full hearing where *any* (not all)

evidence is presented on the claim, and not when the claim is submitted for decision. The purpose of impleading the Fund is to allow the Fund to be actively involved in the collection of evidence and avoid duplication of effort, additional expense, and delay on the part of all parties, particularly the claimant. By permitting the Fund to be impleaded at the final full hearing before the examiner, the claimant would be put to the additional expense of retaking much of the evidence, thus thwarting the legislative intent of a speedy disposition. Additional expenses would be incurred in retaking medical depositions, for legal fees, and for the cost of transcripts and depositions. In addition, the legislature apparently recognized the need of having the Fund present when stipulations are taken and the issues formed.

The director in a well-reasoned decision correctly determined that the Fund was not timely impleaded, and the trial court adopted that decision. We affirm, and hold that the term "first full hearing" as used in K.S.A. 1978 Supp. 44-567(c) means the first hearing before an examiner at which pretrial stipulations are taken or testimony is presented, although it does not include a preliminary hearing as provided by K.S.A. 1978 Supp. 44-534(a).

Affirmed.