(859 P.2d 382)

No. 68,352 [1]

LORRAINE R. WEST-MILLS, *Appellee,* v. DILLON COMPANIES, INC., and CNA INSURANCE COMPANY, *Appellants,* and KANSAS WORKERS COMPENSATION FUND, *Appellee.*

Opinion filed May 21, 1993.

*Frederick J. Greenbaum* and *Douglas M. Greenwald,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellants Dillon Companies, Inc., and CNA Insurance Company.

*John F. Hayes,* of Gilliland & Hayes, P.A., of Hutchinson, for appellant Dillon Companies, Inc., self-insured.

*James B. Zongker,* of Render, Kamas & Hammond, of Wichita, for appellee Lorraine R. West-Mills.

*Vincent L. Bogart,* of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for appellee Kansas Workers Compensation Fund.

Before GERNON, P.J., PIERRON, J., and PAUL E. MILLER, District Judge, assigned.

GERNON, J.: Dillon Companies, Inc., (Dillon) and CNA Insurance Company (CNA) appeal the district court's ruling in this workers compensation case. Dillon and CNA contend that the district court erred in finding that Lorraine R. West-Mills suffered a 40% permanent partial disability and in finding that Dillon and CNA failed to timely implead the Kansas Workers Compensation Fund.

West-Mills had, and has, a condition known as intestinal candida. Candida is defined as a class of parasitic, yeastlike fungi. West-Mills' intestinal candida has resulted in her hypersensitivity to mold. A physician testified that West-Mills' condition was caused by a longstanding alteration in her immune system whereby she has an inability to cope with candida yeast infections and has a body-wide susceptibility to yeast infections.

West-Mills was employed as a meat wrapper with Dillon in the Wichita area for approximately 18 years. She terminated her employment with Dillon in November of 1990, upon the recommendation of her doctor. Her mold sensitivity had caused her hands to develop blisters, rashes, and cracked, bleeding sores when exposed to the mold spores present in the meat department. She began experiencing skin rashes and blisters on her hands in 1985 and first sought medical attention in 1987.

West-Mills filed a claim for workers compensation benefits in 1990. The matter was set for hearing on April 15, 1991. The only appearances at the hearing were by West-Mills and her attorney. The administrative law judge (ALJ) noted that Dillon had been notified of the hearing and proceeded to hear West-Mills' testimony.

In May of 1991, Dillon impleaded the Kansas Workers Compensation Fund (Fund), alleging that West-Mills was a handicapped employee as defined by K.S.A. 44-566(b). The Fund filed a motion to dismiss itself from the proceedings on the grounds that Dillon had failed to timely implead the Fund pursuant to K.S.A. 1992 Supp. 44-567(d), which requires the Fund to be

impleaded "prior to the first full hearing where any evidence is presented on the claim."

The ALJ presided over another hearing, at which West-Mills was cross-examined by Dillon and the Fund. The Fund renewed its objection as to being improperly impleaded.

The ALJ found that West-Mills' candida was a preexisting condition, that Dillon's meat department had a high concentration of molds, and that West-Mills had suffered an accidental injury within the meaning of K.S.A. 44-501. The ALJ ordered Dillon to pay West-Mills' medical expenses from May 1987 until April 1991, but awarded no permanent partial disability benefits. The ALJ determined the Fund was not liable because it was not properly impleaded prior to April 15, 1991, when West-Mills testified.

On review, the director determined the Fund was timely impleaded and was liable for the authorized medical care from April 1989 through April 3, 1991. The director affirmed the ALJ's finding of no permanent partial disability. The director then reduced West-Mills' recovery of medical expenses because, "[u]ntil the level of mold spores in the home were reduced it is not possible to attribute the hand rash solely to the work site."

On appeal, the district court affirmed the finding that an accidental injury occurred but reversed the director's limitation of West-Mills' recovery of medical expenses. The district court found that West-Mills "has sustained a 40% permanent partial disability to the body as a whole as a result of her accidental injuries." The court awarded her $58,930 in permanent partial disability benefits. In addition, the district court reversed the director's ruling concerning the Fund, finding that the Fund was not properly impleaded at the time of the first hearing.

Dillon and its insurer appeal.

*Was the Fund properly impleaded?*

K.S.A. 1992 Supp. 44-567(d) provides:

"An employer shall not be relieved of liability for compensation awarded nor shall an employer be entitled to an apportionment of the costs thereof as provided in this section, unless the employer shall cause the commissioner of insurance, in the capacity of administrator of the workers' compensation fund, to be impleaded, as provided in K.S.A. 44-566a and amendments thereto, in any proceedings to determine the compensation to be awarded

a handicapped employee who is injured or disabled or has died, by giving written notice of the employee's claim to the commissioner of insurance *prior to the first full hearing where any evidence is presented on the claim.*" (Emphasis added.)

The district court found that, because the Fund had not been impleaded prior to the first hearing on April 15, 1991, it should be dismissed from the action pursuant to K.S.A. 1992 Supp. 44-567(d). Dillon contends that the court erred in dismissing the Fund because the Fund was impleaded before the first "full" hearing was held. Dillon argues that, because the April 15 hearing did not include any pretrial stipulations or cross-examination of the claimant, it was not a "full" hearing as intended by the statute.

Dillon argues that the term "first full hearing" as used in K.S.A. 1992 Supp. 44-567(d) means "the first hearing before an administrative law judge, other than a preliminary hearing provided by K.S.A. [1992 Supp.] 44-534a, at which pre-trial stipulations are taken *and* testimony is presented." (Emphasis added.) K.A.R. 51-15-2(d).

The Kansas Court of Appeals has repeatedly held "that the term 'first full hearing' as used in K.S.A. 1978 Supp. 44-567(c) [now K.S.A. 1992 Supp. 44-567(d)] means the first hearing before an examiner at which pretrial stipulations are taken *or testimony is presented,* although it does not include a preliminary hearing as provided by K.S.A. 1978 Supp. 44-534(a)." (Emphasis added.) *Safeway Stores, Inc. v. Workers' Compensation Fund,* 3 Kan. App. 2d 283, 288, 593 P.2d 1009 (1979). See *Hampton v. Professional Security Co.,* 5 Kan. App. 2d 39, 42, 611 P.2d 173 (1980); *Griggs v. Sears, Roebuck & Co.,* 4 Kan. App. 2d 22, 23, 601 P.2d 695 (1979). The record clearly reflects that the April 15, 1991, hearing was not a preliminary hearing.

In *Safeway,* the employer and its insurer appealed the district court's decision affirming the director's determination that the Fund had not been timely impleaded pursuant to K.S.A. 1978 44-567(c) prior to a hearing where the claimant testified and pretrial stipulations were taken. The Fund was not impleaded until six months later. Safeway and its insurer argued that a "full" hearing did not occur until all of the evidence was presented and the claim was submitted to the examiner. 3 Kan. App. 2d at 285.

In affirming the decision of the district court, the Court of Appeals held as follows:

"The phrase in question does not refer to 'a full hearing,' but to 'the *first* full hearing.' Appellants attempt to justify the use of 'first' by arguing that there is a second full hearing on director's review and a third full hearing before the district court, and so forth. We do not so interpret the phrase. The phrase used refers to the *first* (presumably of several) full hearing where *any* (not all) evidence is presented on the claim, and not when the claim is submitted for decision. The purpose of impleading the Fund is to allow the Fund to be actively involved in the collection of evidence and avoid duplication of effort, additional expense, and delay on the part of all parties, particularly the claimant. By permitting the Fund to be impleaded at the final full hearing before the examiner, the claimant would be put to the additional expense of retaking much of the evidence, thus thwarting the legislative intent of a speedy disposition. Additional expenses would be incurred in retaking medical depositions, for legal fees, and for the cost of transcripts and depositions. In addition, the legislature apparently recognized the need of having the Fund present when stipulations are taken and the issues formed." 3 Kan. App. 2d at 287-88.

See *Griggs,* 4 Kan. App. 2d at 23 ("By the clear wording of the statute, an employer cannot seek to shift all or any part of the cost of an award to the Fund unless the Fund is impleaded 'prior to the first full hearing.' "). The Court of Appeals also ruled that "[l]iberal construction is not afforded an employer against the Fund other than in those instances where a liberal construction would advance the legislative aim of encouraging the employment of handicapped persons." *Safeway,* 3 Kan. App. 2d at 286.

K.S.A. 1992 Supp. 44-567(d) requires the Fund to be impleaded "prior to the first full hearing where any evidence is presented on the claim." West-Mills testified by direct examination at the April 15, 1991, hearing. Dillon received proper notice of this regular hearing and, for whatever reason, did not attend. The Fund should not be penalized because of Dillon's failure to appear. Because the Fund was not impleaded prior to the April 15, 1991, hearing, it is not a proper party to the action. Therefore, the district court's ruling on this issue is affirmed.

*Was there substantial competent evidence to support the district court's finding of 40% permanent partial disability?*

The standard of review in workers compensation cases is well settled. Kansas case law allows the district court a trial de novo

on the record, and, although the court is bound by the agency record, the district court has the jurisdiction and the duty to make an independent adjudication of the facts and the law. *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 171, 176, 777 P.2d 765 (1989). The district court has full power to grant or refuse compensation and to increase or diminish any award as justice requires. See *Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, 171, 476 P.2d 966 (1970).

An appellate court's scope of review in a workers compensation case is as follows:

"In workers' compensation cases, the scope of review by an appellate court is to determine whether the district court's judgment is supported by substantial evidence. The evidence is viewed in the light most favorable to the party prevailing below and if there is substantial evidence to support the district court's factual findings, the appellate court has no power to weigh evidence or reverse the final order of the district court. [Citation omitted.] The term 'substantial evidence' when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. [Citation omitted.]" *Baxter v. L. T. Walls Constr. Co.*, 241 Kan. 588, 591, 738 P.2d 445 (1987).

Both sides agree that West-Mills suffered an accidental injury while working at Dillon's meat department. See K.S.A. 1992 Supp. 44-508(d), (e). The medical evidence clearly reflects that the high level of mold spores present in the claimant's work environment led to the outbreaks of rashes and blisters suffered by West-Mills. However, the medical evidence also indicates that these outbreaks were the result of West-Mills' preexisting hypersensitivity to yeast and mold spores. The alteration to her immune system which resulted in her present susceptibility occurred during her early childhood from an overingestion of antibiotics or other dietary factors and is not in any way related to her work at Dillon. While the temporary flare-up in West-Mills' symptoms was work-related, and, thus, compensable as an accidental injury, the permanency of her condition is not the result of this injury and is completely unrelated. West-Mills does not contend that her exposure to mold spores at Dillon caused a permanent aggravation or exacerbation of her condition. After

leaving her employment with Dillon, West-Mills' hands returned to normal.

Dillon argues that it should not be held liable for permanent partial disability benefits where the permanency of West-Mills' condition did not result from any injury she suffered during the course of her employment. Dillon compares West-Mills' situation with an epileptic who suffers a seizure at work, an individual with multiple sclerosis who falls at work, or a hemophiliac who cuts himself or herself at work. Dillon contends that, while the employer may be liable for expenses resulting from the seizure, the fall, or the cut, the employer should not be held liable for the underlying, preexisting epilepsy, multiple sclerosis, or hemophilia.

To support the trial court's finding of permanent partial disability, West-Mills points to the medical testimony of record which conclusively establishes that West-Mills will continue to react similarly when exposed to high levels of mold spores. West-Mills also argues that, because she has been employed as a meat wrapper with Dillon all of her adult life, the court could have found a 100% permanent partial disability based on the medical testimony that she could not work in such an environment without suffering further outbreaks.

The clear intent of the Workers Compensation Act in awarding disability benefits is to compensate employees for damages resulting from injuries received at the workplace and any permanent damage resulting therefrom which prevents the employee from performing work in the open labor market and earning comparable wages. See K.S.A. 1992 Supp. 44-510c(a)(1), (2); K.S.A. 1992 Supp. 44-510d(a); *Brown v. The City of Wichita,* 17 Kan. App. 2d 72, 74, 832 P.2d 365, *rev. denied* 251 Kan. 937 (1992). Where the permanency of the condition does not result from the work-related injury, the employer is not liable for permanent partial disability benefits. In the present case, the record is devoid of any evidence to support the district court's award of 40% permanent partial disability. Without any showing that West-Mills' employment at Dillon made her more susceptible to these outbreaks or caused the outbreaks to be more severe in nature, the award for permanent disability is unwarranted.

Because the district court's award is not supported by substantial competent evidence, Dillon's argument concerning the standard used by the court to determine the amount of the award is moot.

Affirmed in part and reversed in part.