No. 78,055

MIAMI COUNTY, KANSAS, *Appellee*, v. PATRICK J. SVOBODA, *Appellant*.

(955 P.2d 122)

Opinion filed March 6, 1998.

*Ernest C. Ballweg*, of Johnston, Ballweg & Tuley, L.C., of Overland Park, argued the cause and was on the brief for appellant.

*David R. Heger*, county counselor, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Patrick J. Svoboda operates a private landing field on his farm in Miami County, Kansas. Pursuant to local zoning regulations, Miami County required Svoboda to obtain a conditional use permit. He argued that his use of the field is for agricultural purposes and is, therefore, exempt under K.S.A. 19-2921. Under the unique facts of this case, we conclude that contrary to the decision of the trial court, Svoboda's use of the landing field is exempt from local zoning regulations.

The material facts in this case are undisputed. The defendant is the owner of a 141-acre farm in Miami County which is zoned rural residential. He also owns farm land in Crawford, Bourbon, Linn, Anderson, and Franklin Counties. He testified that the farm in question is primarily given over to the production of turf grass

which he sells in the field to installers. There is no question in this case that the production of turf grass is an agricultural activity under Kansas law. See K.S.A. 2-3203(a). The crop is irrigated from a lake on the farm. While it is unclear how much of the property in Miami County is given over to the production of turf grass, there is at least one 40-acre tract upon which the defendant grows bluegrass sod.

The defendant admitted that since 1990, he has been landing his two airplanes on the 40-acre sod tract. He testified that the sod was an ideal location for the landing field because harvesting of the sod did not tear up the ground. Upon his application, the field has been designated a landing field by the Federal Aviation Administration. The designation by the FAA, however, does not exempt the property from local zoning control. See *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 783-790 (6th Cir. 1996).

In June 1992, the defendant was notified by Miami County that his use of the property as a landing field was a violation of county zoning regulations. The defendant countered that he used the landing field in his farming operation, which qualified as an agricultural use under state law and was, therefore, exempt from the local zoning regulations of Miami County.

A zoning violation complaint was filed against the defendant. At trial, Miami County presented the testimony of one of the defendant's neighbors, who stated that she saw him using the property as a landing field on several occasions. The defendant stipulated that the property in Miami County is zoned rural residential and that he does not have a conditional use permit for a landing field. Miami County then rested its case.

The defendant argued that he used the property, including the landing field, in his farming operations. He testified that he has been farming full-time for the past 2 years, although he farmed part-time for some 25 years prior to that. He introduced a list of ways in which he utilized his aircraft in the course of his farming operation. The uncontroverted evidence of the defendant was that he used his aircraft to check cattle and to find lost cattle (during the times that he raised cattle on his various farms), to check fences, track down trespassers and poachers, check irrigation,

check the condition of his crops, inspect seed stands, check fertilizer coverage on crops and pastures, check field conditions, check local sod supplies, pick up machinery and parts for farm equipment, attend farm equipment auctions and product information shows, attend meetings with farm tenants, attend meetings with Farm Service Administration personnel in Manhattan, Kansas, as well as the other counties where the defendant owns farmland, and to attend educational seminars on farming. The defendant also testified that he used his aircraft to check his competitor's supply of sod and to pick up farming supplies.

Based upon the above evidence, the trial court found that the use of the landing field was not an agricultural use and, thus, the defendant was subject to zoning regulations. In so finding, the trial court stated:

"The case that controls the issue here is *Weber v. Board of Franklin County Commissioners,* 20 Kan. App. 2d 152, 884 P.2d 1169 (1994). In *Weber,* the court provides an extensive history of the cases involving agricultural purposes and zoning regulations in Kansas. The court decided that since dogs were not within the definition of livestock, the raising of greyhounds was not an agricultural use of the land and was therefore not exempt from applicable zoning regulation of kennels.

"In this case is an airplane an agricultural machine? The court thinks not. An airplane is a implement of transportation not of husbandry. . . .

"Vehicles have never been considered as farm machinery. It is not 'ordinary and necessary' to have an airplane in order to till the soil. This is the type of historical, comprehensive analysis employed by the *Weber* court."

## Discussion and Analysis

Kansas cities and counties are authorized by state statute to enact and enforce planning and zoning laws for the protection of the public health, safety, and welfare. K.S.A. 12-741. Miami County enacted zoning regulations governing the use of property in Miami County. These regulations require a conditional use permit for the operation of public or private airports and/or landing fields. The defendant contends that under the facts, his use of the landing field on his property constitutes an agricultural use and is exempt from local zoning regulations under the following provisions of K.S.A. 19-2921:

"Except for flood plain regulations in areas designated as a flood plain, regulations adopted pursuant to this act shall not apply to the use of land for agricultural purposes, nor for the erection or maintenance of buildings thereon for such purposes so long as such land and buildings erected thereon are used for agricultural purposes and not otherwise."

The Miami County zoning regulations acknowledge state law by providing that the "Zoning Regulations shall not apply to the use of land for agricultural purposes, nor for the erection or maintenance of buildings so long as such land and buildings are used for agricultural purposes and not otherwise." Miami County regulation § 17-2.01.

The question of whether a landowner's landing field constitutes an agricultural use of land under the provisions of K.S.A. 19-2921 is a question of first impression in Kansas. While dependent upon the circumstances involving use, the ultimate question is one of law and our standard of review is unlimited. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992); *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The trial court focused upon the airplane and concluded that an airplane is not an implement of husbandry as that term is defined by state regulation but, rather, is an implement of transportation. Thus, the trial court concluded that the use of the private landing field in this case is not an agricultural use. In reaching its decision, the trial court relied almost exclusively on the Court of Appeals' decision in *Weber v. Board of Franklin County Comm'rs*, 20 Kan. App. 2d 152, 884 P.2d 1159 (1994).

In *Weber*, local zoning regulations prohibited rural residential property from being used as a kennel without a conditional use permit from the county. After examining prior Kansas case law, including our decisions in *VanGundy v. Lyon County Zoning Board*, 237 Kan. 177, 699 P.2d 442 (1985), and *Blauvelt v. Board of Leavenworth County Comm'rs*, 227 Kan. 110, 605 P.2d 132 (1980), the Court of Appeals concluded that because greyhounds were not "livestock," the commercial raising of greyhounds did not constitute an agricultural purpose. 20 Kan. App. 2d at 157-58. In a similar manner, the trial court in this case determined that since

an airplane is not an implement of husbandry, its use is not agricultural. This conclusion warrants examination.

Unlike the situation in *Weber*, the defendant in this case was engaged in an agricultural activity as that term is defined in K.S.A. 2-3203(a): "the growing or raising of horticultural and agricultural crops . . . for commercial purposes." In *Weber*, there was no need to examine the specific use of the property in light of the court's determination that greyhounds were not livestock and the raising of greyhounds for commercial purposes was not an agricultural activity. However in this case, we deal with an underlying agricultural activity, and the question remains whether the defendant's use of the landing field is for agricultural purposes under K.S.A. 19-2921.

The restriction placed upon cities and counties with regard to agricultural uses of rural residential property in Kansas was intended by the legislature to spare the farmer from governmental regulations. In 1985, this court noted:

"[T]he obvious purpose of K.S.A. 19-2921 in excluding the use of land from county zoning regulations was to favor agricultural uses and farmers. Since this state's economy is based largely on the family farm the legislature appeared to intend to spare the farmer from governmental regulations and not to discourage the development of this state's farm industry." *VanGundy*, 237 Kan. at 182.

Moreover, because zoning ordinances are in derogation of the right of private property, they should be liberally construed in the property owner's favor; where exceptions appear they are liberally construed in favor of the property owner. *VanGundy*, 237 Kan. at 182.

This is not the first time this court has been called upon to determine whether a particular use of land is for an agricultural purpose. In *Blauvelt*, 227 Kan. at 111, a case involving a question not unlike the one we are called on to decide today, we examined "whether a dwelling located on a farm occupied by the owner-farmer serves an agricultural purpose and is therefore exempt from county zoning regulations" under the provisions of K.S.A. 19-2921. We recognized the legitimate concern with the problems of suburban development and that such development is subject to reasonable regulations within the provisions of K.S.A. 19-2901 *et seq*. However, based upon the specific facts, we reached a common-

sense determination that a residence on agricultural land occupied by the farmer who intends to live and carry on agricultural purposes upon the property was a structure used for agricultural purposes. 227 Kan. at 113-14.

Later, in *VanGundy*, we were called upon to determine whether a particular use was for an agricultural purpose. VanGundy owned and farmed a quarter section of land in Lyon County. He was in the process of building a pond on his property for irrigation of crops, and he brought action against Lyon County authorities seeking to enjoin the county from enforcing zoning regulations against the quarrying of rock. Local zoning regulations required an owner to obtain a conditional permit to operate a quarry. We were called on to determine whether the blasting and removal of rock for the construction of a dam was an agricultural purpose or whether such activity constituted operating a quarry.

We held that the blasting of rock to excavate a pond for irrigation purposes was an agricultural purpose under K.S.A. 19-2921. 237 Kan. at 182-83. In reaching this conclusion, we carefully examined the facts of the particular case and the purpose for which the activity was being conducted. We concluded that while the blasting constituted quarrying, it did not under "these facts alter the intended purpose," which was the construction of an irrigation pond. 237 Kan. at 182.

As the above cases indicate, the question of whether a landing field constitutes an "agricultural purpose" cannot be resolved by simply determining whether an airplane is an "instrument of husbandry." Instead, we must examine the facts in order to determine whether the use of the landing field itself constitutes a use of the land for agricultural purposes.

What do the facts of the case at hand reveal regarding the use of the landing field? The defendant used his landing field and two planes to check cattle and to find lost cattle (during the times that he raised cattle on his various farms), to check fences, track down trespassers and poachers, check irrigation, check the condition of his crops, inspect seed stands, check fertilizer coverage on crops and pastures, check field conditions, check local sod supplies, pick up machinery and parts for farm equipment, attend farm equip-

ment auctions and product information shows, attend meetings with farm tenants, attend meetings with Farm Service Administration personnel in Manhattan, Kansas, as well as the other counties where the defendant owns farmland, attend educational seminars on farming, check his competitor's supply of sod, and to pick up farming supplies. Thus, it appears that the airstrip was used for purposes that were agricultural in nature and not otherwise.

Miami County contends that the agricultural purposes for which the landing field is used must accrue to the tract itself and argues that the defendant's use of the landing field is not ancillary to the agricultural purpose of the tract of land on which it sits. However, this is not a case where a landowner builds a landing field on property simply to house his plane which he then uses in the farming of other property. Instead, the defendant in this case used his airstrip for agricultural purposes benefitting all of the property he owns, including the tract on which the landing field is located where the defendant has at least 40 acres of growing sod supplied with water from an irrigation pond on the property.

Miami County argues that growing sod on the property is simply a "ruse" to allow the defendant to operate his landing field in defiance of the zoning laws. If this were true, such a finding would certainly be a reason to hold that the landing field did not serve an agricultural purpose. However, no facts in the record establish this contention, nor was any evidence presented by Miami County to this effect at trial.

Miami County also argues that where the defendant is using his land both for sod production and for a landing field, he is not using it for agricultural purposes, as contemplated by the "and not otherwise" language of K.S.A. 19-2921. This argument ignores the fact that both the growing of the sod and the landing field serve an agricultural purpose.

Under the unique facts in this case, where the only evidence is that the landing field is being used for agricultural purposes, the landing field is exempt from county zoning regulations under the provisions of K.S.A. 19-2921. There are many situations where a landing field will not serve an agricultural purpose, such as where the field is used primarily for recreational flying. On the basis of

the record, however, this is not such a case. Instead, the landing field is used for agricultural purposes in accordance with K.S.A. 19-2921.

Reversed.