(114 P.3d 182)

No. 93,302

MILLIE K. CASEY, *Appellant*, v. DILLON COMPANIES, INC., *Appellee*.

Opinion filed July 1, 2005.

*Robert R. Lee*, of Wilson, Lee, Gurney, Carmichael & Hess, of Wichita, for the appellant.

*Scott J. Mann*, of Mann Law Offices, of Hutchinson, for the appellee.

Before GREENE, P.J., PIERRON and BUSER, JJ.

PIERRON, J.: Millie K. Casey appeals the decision of the Workers Compensation Board (Board) that she only suffered a temporary work-related injury as a result of allergic reactions while working at a Dillon Companies, Inc., grocery store (Dillons) in Sterling. Casey argues that she suffers from an occupational disease and should be granted workers compensation benefits based on her wage loss.

The facts in this case are for the most part undisputed. Casey began working at the Dillons in January 1990. Her jobs ranged

from checker to video manager, to training new employees, and to entering price changes in the store's computer scanning system. She did not work in the produce room, and her only contact with produce was in handling items of produce while working as a checker.

In 1996, Casey began experiencing symptoms of an allergic reaction at work, occasionally breaking out in hives, experiencing difficulty breathing, and her eyes would swell. She was treated by her primary physician, Dr. Alan Davidson. Dr. Davidson provided prescription allergy medication and cortisone shots. Casey was referred to Dr. Bennett Radford, an internal medicine doctor specializing in allergy immunology. Dr. Radford treated Casey for seasonal allergies complicated by chronic sinusitis. Dr. Radford also stated that Casey was having an anaphylactic reaction while working at Dillons. Testing by Dr. Radford revealed that Casey was allergic to fresh fruits, fresh vegetables, molds, trees, grasses, weeds, and animal danders. Dr. Radford stated that Casey's allergies developed over the time period of her work at Dillons because of a "priming effect" of her exposure to the allergens.

Dr. Radford recommended that Casey not return to work at Dillons in Sterling because of her allergic reactions. He suggested that "it might be just that store" and she could possibly work in another Dillons. Casey continued to work at the Sterling Dillons until February 18, 2002, when Drs. Davidson and Radford took her off work. On April 28, 2003, she returned to work at the Sterling Dillons for a 2-hour shift. Approximately 30-40 minutes into her shift, Casey developed itchy and swollen eyes and her throat began to bother her. After her 2-hour shift, Casey clocked out, gave herself an injection, and had someone give her a ride home. She was taken to a medical center by her mother because of the allergic reaction. Dr. Davidson again took Casey off work.

Casey had filed a claim for workers compensation on April 17, 2002. The administrative law judge (ALJ) referred Casey to Dr. Thomas Beller, a board-certified internist with a subspecialty in pulmonary medicine, for an independent medical examination. Dr. Beller concluded Casey suffered from allergic rhinitis, food allergies, and a history of episodic work-related allergic reactions in-

cluding skin rashes. Dr. Beller was uncertain as to the causation of Casey's allergic reactions but had the opinion that it was "associated with some environment exposure at the grocery store." Dr. Beller believed that Casey should not return to a grocery store work environment. Dr. Beller rated Casey with a 10% whole body impairment by reason of the skin lesions developed during her acute allergic reactions.

Dillons had Casey examined by Dr. Allen Parmet, a board-certified physician in aerospace medicine and occupational medicine. Dr. Parmet also diagnosed Casey as suffering from life-long or long-standing allergic rhinitis and many food allergies as a result of exposure to fruit and vegetable pollen and mold found at the Dillons store. However, Dr. Parmet found that Casey did not suffer any permanent aggravation or injury as a result of her workplace exposure and did not give her any permanent work restrictions or functional impairment.

The ALJ denied Casey any benefits and concluded there was no "sudden and unexpected event or events" and no "manifestation of force" that would constitute a personal injury by accident. The ALJ also concluded that Casey's condition was not an occupational disease because none of the expert testimony attributed the development of the disease to any "particular or peculiar hazard" of her employment at Dillons, nor did she develop allergies because of a special risk of a disease associated with a grocery store.

The Board reversed the ALJ's decision. The Board stated that Casey's condition presented elements of both a series of accidental injuries and an occupational disease. The Board concluded that Casey suffered a repetitive trauma condition similar to carpal tunnel syndrome, which, therefore, was compensable as an accidental injury. The Board stated it gave greater weight to the opinions of Dr. Radford, as treating physician, and Dr. Beller, as independent medical examiner, than to Dr. Parmet. The Board concluded:

"Once claimant stopped working for respondent her condition improved, her allergic reactions subsided and, with the use of medications, her symptoms returned to baseline. Her physical examinations by all three physicians were of an essentially normal healthy individual but with numerous allergies that were in remission. Accordingly, the Board concludes that claimant's work-related injury

was temporary. She therefore is not entitled to permanent partial disability compensation. As claimant is not claiming temporary total disability compensation, her benefits are limited to authorized and unauthorized medical expenses. All reasonable medical expenses for the treatment of claimant's injuries and allergy condition shall be paid by respondent subject to the Kansas Worker's Compensation Schedule for Medical Fees up through and including the November 14, 2002, examination by Dr. Beller, when claimant's condition was found to be in remission and she was described as being at maximum medical improvement."

However, the Board was not in complete agreement. Two Board members dissented from the majority decision:

"The undersigned Board Members agree with the majority that this claim is compensable but would treat it as an occupational disease rather than an accidental injury. [Footnote citing *Armstrong v. City of Wichita*, 21 Kan. App. 2d 750, 907 P.2d 923 (1995)]. We would further find claimant's work-related condition is permanent, not temporary, and would award compensation based upon her actual wage loss as provided by K.S.A. 44-5a01 and K.S.A. 44-5a06."

Casey argues she suffered from an occupational disease and is entitled to compensation based on her wage loss. She seeks reversal of the Board's order and a remand for determination by the Board of the amount of compensation she is entitled to based on the occupational disease. Casey maintains there was no accidental injury:

"This is a situation where claimant was exposed on a daily basis to an environment heavy with fruit and vegetable pollen and mold. Over the course of 13 years, claimant's mass cells were saturated to the point where she developed allergic rhinitis directly caused by fruits and vegetables which are particular to a grocery store environment. There is no trauma or accidental injury. There is a long exposure to an environment laden with substances which have saturated claimant's mass cells and created an allergy which has resulted in symptomatic food allergies. This occupational disease has resulted in a loss of employment to claimant and claimant's injuries should be compensated pursuant to the occupational disease statute."

K.S.A. 44-556(a) specifically subjects workers compensation appeals to the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq*. The KJRA limits the relief granted on appeal to just a few issues, including an agency's erroneous interpretation of law and findings of fact not supported by substantial evidence when viewed in light of the rec-

ord as a whole. K.S.A. 77-621(c)(4) and (7). The Workers Compensation Act (Act), K.S.A. 44-501 *et seq.*, limits review of all orders after October 1, 1993, to questions of law. K.S.A. 44-556(a) and (c); L. 1995, ch. 1, sec. 3 (revived and amended). Whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Tovar v. IBP, Inc.*, 15 Kan. App. 2d 782, 784, 817 P.2d 212, *rev. denied* 249 Kan. 778 (1991). The question of whether an injury is compensable is one of law, and an appellate court's review is de novo. *Frazier v. Mid-West Painting, Inc.*, 268 Kan. 353, 356, 995 P.2d 855 (2000).

The question in this case is whether Casey has suffered a compensable injury under the Act. As was stated of carpal tunnel syndrome in *Berry v. Boeing Military Airplanes*, 20 Kan. App. 2d 220, 229, 885 P.2d 1261 (1994), Casey's condition is a hybrid condition that is "neither fish nor fowl." We agree with the Board that Casey has suffered a compensable injury. Her condition, however, does not fit easily within the Act as either a work-related injury or an occupational disease.

This case requires us to interpret multiple statutes of the Act. As a result, we have unlimited review of questions of law involving statutory interpretation. See *Miami County v. Svoboda*, 264 Kan. 204, Syl. ¶ 1, 955 P.2d 122 (1998). Although we do give deference to an agency's interpretation of the law, if such interpretation is found to be erroneous, we are to take correction action. *See Boatwright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶ 9, 834 P.2d 368 (1992).

Regarding work injuries, K.S.A. 44-501(a) provides:

"If in any employment to which the workers compensation act applies, personal injury by accident arising out of and in the course of employment is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act."

Several definitions in the Act are relevant to this case. "Personal injury" and "injury" are defined in K.S.A. 2004 Supp. 44-508(e) to mean:

"any lesion or change in the physical structures of the body, causing damage or harm thereto, so that it gives way under the stress of the worker's usual labor. It is not essential that such lesion or change be of such character as to present

external or visible signs of its existence. An injury shall not be deemed to have been directly caused by the employment where it is shown that the employee suffers from disability as a result of the natural aging process or by the normal activities of day-to-day living."

"Accident" is defined in K.S.A. 2004 Supp. 44-508(d):

"[A]n undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. The elements of an accident, as stated herein, are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workers compensation act that the employer bear the expense of accidental injury to a worker caused by the employment."

On the other hand, K.S.A. 44-5a01(b) defines the affliction of an "occupational disease" as:

"only a disease arising out of and in the course of the employment resulting from the nature of the employment in which the employee was engaged under such employer, and which was actually contracted while so engaged.'Nature of the employment' shall mean, for purposes of this section, that to the occupation, trade or employment in which the employee was engaged, there is attached a particular and peculiar hazard of such disease which distinguishes the employment from other occupations and employments, and which creates a hazard of such disease which is in excess of the hazard of such disease in general. The disease must appear to have had its origin in a special risk of such disease connected with the particular type of employment and to have resulted from that source as a reasonable consequence of the risk. Ordinary diseases of life and conditions to which the general public is or may be exposed to outside of the particular employment, and hazards of diseases and conditions attending employment in general, shall not be compensable as occupational diseases."

The Kansas courts have settled the issue of whether carpal tunnel syndrome is a work-related accident or an occupational disease. In *Berry*, this court addressed the problem of assigning a date of injury to a claimant suffering from carpal tunnel syndrome. In attempting to determine whether carpal tunnel is an occupational disease or an accidental injury, the court determined that carpal tunnel is caused by repetitive trauma over a long period of time. The *Berry* court stated: "While it is true that it is caused by trauma and thereby fits the definition of an 'injury caused by accident,' it is nonetheless a condition that defies any attempt to affix the precise date the accident occurred." 20 Kan. App. 2d at 229.

Helpful for the discussion in the case at bar is the *Berry* court's cite to a leading workers compensation authority:

" '[Historically,] the two crucial points of distinction between accident and occupational disease were the element of unexpectedness and the matter of time-definiteness. What set occupational disease apart from accidental injuries was both the fact that they could not honestly be said to be unexpected, since they were recognized as inherent hazard[s] of continued exposure to conditions of the particular employment, and the fact that they were gradual rather than sudden in onset.' 1B Larson, The Law of Workman's Compensation § 41.31 (1992)." *Berry*, 20 Kan. App. 2d at 224.

We do not believe Casey's condition falls within the occupational disease provisions of the Act. There is simply no special risk associated with Casey's work at Dillons. There is no "particular and peculiar hazard of such disease which distinguishes the employment from other occupations and employments." K.S.A. 44-5a01(b). Several Kansas cases on occupational diseases are demonstrative. In *Box v. Cessna Aircraft Co.*, 236 Kan. 237, 689 P.2d 871 (1984), the claimant worked for Cessna to repair manufactured planes and worked near the paint shop. Sometimes the air was so thick with fumes from lacquer paints, polyurethane, enamel, and ketone thinners that Box could not see the other end of the department. The *Box* court sustained a district court finding that the claimant suffered from an occupational disease, namely chronic bronchitis, under the workers compensation system, that it arose out of and in the course of his employment, and that he was permanently and totally disabled. 236 Kan. at 239-47. The *Box* court held: "There was ample substantial and competent evidence to support the trial court's finding that claimant was engaged in an occupation or employment which exposed him to a special risk, a special and peculiar hazard of the disease from which the trial court found he suffers." 236 Kan. at 244.

In *Armstrong v. City of Wichita*, 21 Kan. App. 2d 750, 907 P.2d 923 (1995), *rev. denied* 259 Kan. 927 (1996), Armstrong was exposed to toxic chemicals while working at the city sewer department and one of his physicians diagnosed him with multiple chemical sensitivities. The ALJ found Armstrong's exposure to the toxic substances was of a greater concentration and frequency than that

of the general public and as a result he was 100% temporarily totally disabled. The Board affirmed the ALJ's award. The *Armstrong* court affirmed the award and held that compensation for an occupational disease was in order despite the lack of a specific name or diagnosis recognized by the majority of experts in the medical field. The court stated: "It is enough if it is shown that the worker is disabled and is disabled by a disease or condition which resulted from the nature of his or her employment and which meets the requirements of K.S.A. 44-5a01(b)." 21 Kan. App. 2d at 757.

See also *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 71 P.3d 1097 (2003) (noise-induced hearing loss from continuous exposure to excessive noise while employed by Santa Fe is occupational disease); *Burton v. Rockwell International*, 266 Kan. 1, 967 P.2d 290 (1998) (adult-onset asthma and bronchitis caused by both smoking and dirt, dust, and chemical fumes at place of employment); *Estate of John Doe v. Dept. of Correction*, 268 Conn. 753, 848 A.2d 378 (2004) (HIV is occupational disease for correction officers who, like decedent, are members of correctional emergency response unit).

Casey cites *LeLenko v. Wilson H. Lee Co.*, 128 Conn. 499, 24 A.2d 253 (1942), as the leading case on the majority rule that allergies may constitute an occupational disease. However, *LeLenko* is distinguishable from the above-cited Kansas cases. LeLenko was a linotype operator who developed dermatitis from working with melted lead alloy.

"Linotype machines require a melted lead alloy, from which the type is made. At the defendant's plant pots electrically heated are used in connection with the machines to melt the metal. There is no apparatus for removing the fumes that may result. The pots are completely closed except where the metal is put in. The plaintiff had to open the one attached to his machine for this purpose, and at times when readjustment was necessary; and he also at times handled sticks of type which had not cooled." 128 Conn. at 500-01.

We agree with Dillons that Casey's allergic condition more closely meets the definition for an "ordinary diseases of life" and conditions which the general public may be exposed to outside of a particular employment, which is not compensable as an occu-

pational disease. Not everyone suffers from allergies. However, the allergic reactions suffered by Casey constitute an ordinary disease of life by those who are afflicted. Furthermore, we are not dealing with any generally recognized toxic substances in this case. Casey's allergic reactions are common everyday items not specific or peculiar to the workplace; thus, her development of allergies to these substances has not been proven to have resulted from her employment.

Although Casey's allergic reactions are not an occupational disease, we find that they are a compensable work-related injury. A case not addressed by either the ALJ or the Board is *West-Mills v. Dillon Companies, Inc.*, 18 Kan. App. 2d 561, 859 P.2d 382 (1993). The facts in *West-Mills* presented a similar situation of allergic reactions. West-Mills suffered from a condition known as intestinal candida which caused her to have a hypersensitivity to mold. She worked at a Dillons in Wichita for nearly 18 years. Her mold sensitivity had caused her hands to develop blisters, rashes, and cracked, bleeding sores when exposed to the mold spores present in the meat department. The facts indicated West-Mills started work in 1972, but she did not begin experiencing skin rashes and blisters on her hands until 1985 and first sought medical attention in 1987.

The conclusion in *West-Mills* that the allergies were a work-related injury was clear. *West-Mills* involved the liability of the Kansas Worker's Compensation Fund and whether the Board erred in deciding that West-Mills had suffered a 40% permanent partial disability. Interestingly enough, regarding the classification of West-Mills' injuries, the parties did not dispute that she had suffered an accidental injury. "Both sides agree that West-Mills suffered an accidental injury while working at Dillon's meat department. See K.S.A. 1992 Supp. 44-508(d). The medical evidence clearly reflects that the high level of mold spores present in the claimant's work environment led to the outbreaks of rashes and blisters suffered by West-Mills." 18 Kan. App. 2d at 566.

The ALJ's conclusion that Casey's condition was not a work-related injury is too narrow a reading of the workers compensation statutes. The definition of the term "accident" does not limit itself

to injuries caused by a manifestation of force. See K.S.A. 2004 Supp. 44-508(d). An accident can be an undesigned and unexpected event of an afflictive nature not necessarily accompanied by a manifestation of force. This interpretation, as required by the accident definition in K.S.A. 2004 Supp. 44-508(d), is necessarily "designed to effectuate the purpose of the workers compensation act that the employer bear the expense of accidental injury to a worker caused by the employment."

We borrow again from the language in *Berry*, 20 Kan. App. 2d at 227-230, to conclude that Casey's injuries are compensable. Whether her allergic reactions are a personal injury caused by accident or an occupational disease is an analytical exercise. They have characteristics of both but do not fit exactly into either one. Her condition was caused by repetitive trauma to her immune system over a long period of time during her employment at Dillons. Consequently, she is entitled to compensation for a work-related injury.

Casey also argues her allergic condition is permanent and that the Board erred in finding the condition was only temporary in nature. We disagree. Our standard of review is to determine whether there was substantial competent evidence to support the Board's decision that Casey's allergic condition was only temporary.

Whether the Board's findings of fact are supported by substantial competent evidence is a question of law. *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 703-04, 35 P.3d 788 (2001). Substantial evidence in workers compensation cases is evidence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper, or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved. The appellate court reviews the evidence in the light most favorable to the prevailing party and does not reweigh the evidence or assess the credibility of the witnesses. *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 16-17, 81 P.3d 425 (2003).

Casey cites Dr. Radford's testimony that she will continue to need both oral medications and immunotherapy in the form of injections, and that she is to avoid exposure to a grocery store environment. Dr. Radford would not allow Casey to work in the gro-

cery store environment. Casey also cites Dr. Beller's testimony that her condition is permanent and there would be "fluctuations and exacerbations and remissions of the condition, but I don't see that it is going to necessarily resolve."

Dillons argues the undisputed medical evidence established that Casey has not sustained any permanent aggravation or acceleration of her preexisting nonoccupational and environmental allergies. Dillons states it is also undisputed that once Casey stopped working for Dillons her condition improved, her allergic reactions subsided, and she was essentially a normal healthy individual but with numerous allergies that were in remission. Consequently, Dillons agrees with the Board that Casey's work-related condition was only temporary. As the Board said:

"Once claimant stopped working for respondent her condition improved, her allergic reactions subsided and, with the use of medications, her symptoms returned to baseline. Her physical examinations by all three physicians were of an essentially normal healthy individual but with numerous allergies that were in remission. Accordingly, the Board concludes that claimant's work-related injury was temporary. She therefore is not entitled to permanent partial disability compensation."

The Act was enacted to award disability benefits to employees for damages resulting from injuries received at the workplace and any permanent damage resulting therefrom which prevents the employee from performing work in the open labor market and earning comparable wages. See K.S.A. 44-510c(a)(1); K.S.A. 44-510e(a); *Brown v. City of Wichita*, 17 Kan. App. 2d 72, 74, 832 P.2d 365, *rev. denied* 251 Kan. 937 (1992). "Where the permanency of the condition does not result from the work-related injury, the employer is not liable for permanent partial disability benefits." *West-Mills*, 18 Kan. App. 2d at 567.

We find there is substantial competent evidence to support the Board's conclusion that Casey's work-related injury was only temporary.

Affirmed.